**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

-------------------------------------------------------------------------------------------------------

Eleshea Reid, individually, Michael Matthews, individually, *and on behalf of all others similarly situated,*

          Plaintiffs,

v.

RealPage Utility Management, Inc., Stephen Scott Management, Inc., Cedar Pass South, LLC, Bader Management, Inc., YES Energy Management, Inc.

          Defendants.

Court File #: 24-CV-00368 (JWB/JFB)

**PLAINTIFFS' MEMORANDUM TO OPPOSE DEFENDANTS' BADER AND YES ENERGY MOTIONS TO DISMISS (CONSOLIDATED)**

# TABLE OF CONTENTS

I.     SUMMARY OF LITIGATION...............................................................................3

II.    STANDARD OF REVIEW..................................................................................4

      A. Motion to Dismiss – Rule 12(b)(6)...........................................................4

      B. Matters Outside of Pleadings are not Considered.......................................5

III.   ARGUMENT....................................................................................................6

      A. Procedural Deficiencies Warrant Dismissal of Both Motions.................6

          1. Bader Counter-narrative Creates Controverted Facts.........................7

      B. Plaintiffs Plausibly Claim Conspiracy....................................................10

          1. Joint and Several Liability of Co-conspirators.................................10

          2. Meeting of the Minds.......................................................................11

          3. Pled Allegations of Conspiracy........................................................11

      C. Plaintiffs Plausibly Claim FDCPA Violations........................................12

          1. Requirements of FDCPA..................................................................12

          2. Engaging in Debt Collections Without a License Violates the FDCPA...........14

3.  FDCPA Violations..................................................................... 17

4.  RealPage Threatened Illegal Evictions................................................ 17

5.  RealPage did not Provide Pre-Marinda Warnings........................................ 19

6.  RealPage and YES Energy are Debt Collectors..........................................20

    a.  Bona Fide Fiduciary Exemption is not Applicable.................................21

    b.  Fiduciary Relationship in Minnesota............................................22

    c.  RealPage's Contract did not Create a Fiduciary Relationship....................23

        i.      Special Circumstances Exist to Disclose Concealed Facts..............24

D.  Plaintiffs Plausibly Claim Fraud.......................................................27

E.  Plaintiffs Plausibly Claim Breach of Contract.........................................29

    1.  The Lease Agreement is Unconscionable............................................ 29

    2.  Pled Allegations of Breach of Contract...........................................30

        a.  Illegal Eviction for burning incense......................................... 30

        b.  Illegal Eviction for not paying utility fees.................................30

F.  Plaintiffs Plausibly Claim Abuse of Process........................................... 30

    1.  Pled Allegations of Abuse of Process.............................................32

G.  Plaintiffs Plausibly Claim Retaliation................................................34

H.  Plaintiffs Plausibly Claim Housing Discrimination.....................................35

IV.    CONCLUSION.........................................................................37

## I.  SUMMARY OF LITIGATION

Plaintiffs receive monthly billing statements from Defendant RealPage and CenterPoint Energy. The bills from both companies covered the same rental home and the same months. RealPage bills include bogus utility fees. CenterPoint does not. Why the difference?

Defendants conspired to enter into an illegal agreement to steal and cheat from Plaintiffs and the putative class (The Scam). They deceived, misled, misrepresented, and defrauded tenants. They tricked tenants into believing that the Lease Agreement is legal. It is not.

To justify The Scam, Defendants rely on a purported 'consent' in the Lease Agreement. They claim that tenants consented to monthly billing statements from RealPage, including a purported consent to the bogus fees.

The Lease Agreement is a take-it-or leave-it contract. It is also a consumer contract and it violates numerous statutes and the common law. The Lease Agreement is void. Alternatively, Defendants are in breach of the Lease Agreement, not tenants.

If tenants do not pay, Defendants engage in escalating extortion. It starts with written threats that violate the Fair Debt Collection Practices Act ("FDCPA"). The Landlord threatens to freeze a tenant's on-line rent payment portals until all bogus fees are paid. If not paid, the portal is actually frozen. This prevents tenants from paying next month's rent. If still not paid and after rent is allegedly due (albeit because the Landlord froze the on-line rent portal), extortion escalates to written threats of eviction. If still not paid, the Landlord files Housing Court eviction complaints.

The Housing Court complaint fails to disclose that alleged nonpayment of rent is because the Landlord froze the rent payment portal, making it impossible to pay rent.

## II.    STANDARD OF REVIEW

### A.  Motion to Dismiss  – Rule 12(b)(6)

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), unlike Rule 12(b)(2), a court only considers allegations in the Complaint. *Nat. Indem. Co. v. Allianz Glob. Risks U.S. Ins. Co.,* 8:23-CV-322, *18, 2024, WL 229425 (D. Neb. Jan. 22, 2024). A cause of action should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff cannot plausibly prove any set of facts in support of the claim for relief. *Schaller Tel. Co. v. Gloden Sky v. Casson,* 5 F.3d. 1141, 1148 (8th Cir. 2002).

In analyzing the adequacy of allegations under Rule 12(b)(6), a court must construe the complaint liberally and afford plaintiff all reasonable inference to be drawn from those allegations. *Turner v. Holbrook,* 278 F.3d 754, 757 (8th Cir. 2002). A claim survives if nonconclusory allegations, which must be accepted as true, make it not just 'conceivable' but 'plausible' that a defendant is liable. *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022). A court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminum Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022).

In the Third Circuit, for purposes of evaluating a motion to dismiss, the complaint need not establish a prima facie case in order to survive a motion to dismiss.[1] *Crawford v. Jefferson*

---

[1] Plaintiffs have not found any 8th Circuit cases that directly addresses this issue.

*Hospital,* Civ. Action No. 20-87, 2020 WL 3447759 (E.E. Pa. June 24, 2020) ("A *prima facie*

case is 'an evidentiary standard, not a pleading requirement"). "Instead, plaintiff must "allege

sufficient facts to raise a reasonable expectation that discovery will uncover proof of [plaintiffs']

claims". *Id.* at *8. "Although Plaintiff need not establish a prima facie case of discrimination at

this stage, "the elements of a prima facie claim of disability discrimination remain the Court's

'analytical guideline[s] in assessing plausibility of [plaintiffs] discrimination claims." *Id.;*

*Mandala v. NTT Data, Inc.,* 975 F.3d 202, 208 (2d Cir. 2020) ("To state a claim for disparate

treatment, a plaintiff need not plead a prima facia case; "enough nonconclusory factual matter to

nudge her claim across the line from conceivable to plausible" will suffice.) (cleaned up); *see*

*also, Bonaffini v. City Univ. of N.Y.,* 20-cv-5118, 2021 WL 2206736 (BMC) (E.D. N.Y. June 1,

2021).

### B. Matters Outside the Pleadings are not Considered

> If on a motion under Rule 12(b)(6) or (12(c), matters outside the pleadings
> are presented to and not excluded by the court, the motion must be treated as
> one for summary judgment under Rule 56. All parties must be given
> reasonable opportunity to present all the material that is pertinent to the
> motion."

*Nat. Indem. Co.* at *6-7. Review of a decision to treat a motion to dismiss as a motion for summary

judgment is abuse of discretion. *Id.*

> "On a motion to Dismiss for lack of personal jurisdiction pursuant to Rule
> 12(b)(2), the facts are drawn "not [from] the pleadings alone, but [also from]
> affidavits and exhibits supporting or opposing the motion." *Fastpath, Inc., v.*
> *Arbela Techs Cor.,* 760 F.3d 816, 820 (8th Cir. 2004). Conversely, on a
> Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6), the
> Court considers only materials drawn from the pleadings. *See Bauer v. AGA*
> *Serv. Co.,* 25 F.4th 587, 589 (8th Cir. 2022").

*Id.* at *1-2.

Materials that contradict allegations in the Complaint cannot be considered. Under a Rule(b)(6) analysis, affidavits cannot contradict the complaint:

> "If, on a motion under Rule 12(b)(6), … matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d).  However, a court may consider certain outside materials, such as matters of public record, materials that do not contradict the complaint, exhibits attached to the complaint, and materials that are necessarily embraced by the pleadings, without converting the motion into one for summary judgment. *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999).

*Bank of Montreal v. Avalon Capital Group Inc.,* 743 F.Supp.2d 1021 (D. Minn. 2010). *See also, State ex rel. Nixon v. Coeur D'Alene Tribe,* 164 F.3d 1102 (8th Cir. 1999) (citing *Papasan v. Allain,* 478 U.S.265, 269, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986).

## III.   ARGUMENT

### A.  PROCEDURAL DEFICIENCIES WARRANT DISMISSAL OF BOTH MOTIONS

Bader's notice of motion to dismiss is based on Rule 12(b)(6). Dkt. 71. RealPage's notice of motion also is based on Rule 12(b)(6). Dkt. 76. It is fundamental that a Court must take all factual allegations pled in the First Amended Class Action Complaint (FAC) (Dkt. 63) as true for purposes of a Rule 12(b)(6). One fatal flaw is that Bader impermissibly introduces new facts (counter-narrative), that controvert facts pled in FAC.[2]

Bader's counter-narrative primarily relies on the Declaration of Stacey Neameyer and attached exhibits. Dkt. 46. However, it is deficient. It was filed in support of Bader's initial

---

[2] Bader and RealPage also violate LR 7.1(a) meet and confer requirements for the current motions to dismiss. Earlier meet and confer for their initial motions to dismiss are not relevant. Both motions were dismissed as moot. Text Order. Dkt. 88. These instant second set of motions before the Court are new. They require their own meet and confer. Both motions are procedurally deficient and should be dismissed.

This is not the first time this issue is before the Court. Plaintiffs raised lack of good faith in meet and confer in their memorandum to oppose an extension of time for Defendants to file its motion to dismiss on May 10, 2024. Dkt. 70. Magistrate Judge Docherty issued his Order on May 14, 2024. Dkt 81. He advised "all counsel that going forward the Court will require strict compliance of Rule 7.1(b) for nondispositive motions. Any Motion that does not comply with Local Rule 7.1(b) may be denied without prejudice for that reason alone." Order at 5, Dkt 81. The current two motions at issue were filed on May 13, 2024. The Court also struck YES Energy's Notice of Hearing as violative of LR7.1(c). Text Order. Dkt 88.

motion to dismiss but that motion was denied as moot. Text Order. Dkt. 88. Neameyer's declaration was not refiled for this motion. It is not properly before the Court and should be stricken. If considered, the Court is required to ignore all facts that controvert facts pled in the FAC or any new facts not in the FAC or view the motion as one for summary judgment. Since material facts obviously are in dispute, a motion for summary judgment must be denied.

Bader argues that the Court can rely on the Neameyer declaration and exhibits because facts alleged in the FAC essentially opens the door for then to introduce its counter-narrative facts. Bader suggest that public records can be considered, relying on *Kushner v. Beverely Enterprises, Inc.,* 317 F.3d 820 (8th Cir. 2003). Bader's memorandum at *2, N3, *4, N6, Dkt. 72.

Reliance on *Kushner* is misplaced. It makes clear that a Court cannot rely on disputed facts, including inferences drawn from disputed facts.[3] *Kushner* at 832. *Kushner* observed that a district court did not abuse its discretion by declining to take judicial notice of the extra-record documents. *Id. See also, Graphic Comme'ns Local 1 B Health & Welfare Fund v. CVS Caremark Corp.,* 880 N.W. 2d 682, N2 (Minn. 2014) ("Judicial notice is to be taken with caution and every reasonable doubt as to the propriety of its exercise in a given case should be resolved against it").

### 1. Bader's Counter-narrative Creates Controverted Facts

Bader argues:

> Plaintiff explicitly agreed that water and sewer utility payments would be billed to Plaintiffs "in a separate bill received by Resident each month from Management or a billing service provider ("Utility Billing Company") designated by Management ("Utility Bill") (Neameyer Decl., Exhibit 1, p. 9

---

[3] An example is the Lease Agreement and the Water/Sewer Utilities and Trash Addendum. The validity of both is disputed as analyzed herein. Nonetheless, Bader attempts, like *Kushner,* to offer the exhibits for the truth of the matters asserted therein in. In contrast, if the validity of the lease and addenda were not disputed (including ambiguous terms therein), only then could the Court make a decision as a matter of law on the validity of the lease. A decision on the validity of the lease is premature.

§ 1). In addition, Plaintiffs explicitly agreed that it was their responsibility to "continuously maintain uninterrupted electric and gas service [ ] to the Apartment/Townhouse and it's entrance electric service through the term of this agreement[.] (Neameyer Decl., Ex. 1, p. 2, § 6). The Utilities addendum includes disclosures required by Minnesota Statutes Section 504B.215 (Neameyer Decl., Exhibit 1, p. 9 § 2) and details of the charges Plaintiff's would receive, including administrative fees, convenience fees, and late fees. (Neameyer Decl., Exhibit 1, p. 9 §§ 3,5,7).  The addendum includes explicit acknowledgment that Plaintiffs were responsible for activation fees. (Neameyer Decl., Exhibit 1, p. 9 § 3). (all utility fees are collectively referenced herein as "Utility Fees"). Plaintiffs also were provided with a Welcome Package that included information regarding utilities billing.  (Am. Complaint., ¶ 171; Am. Complaint., Ex. 2). The Welcome Package explicitly informed Plaintiffs that they were responsible for paying all Utility Fees. (Am. Complaint., § 176).

Bader Motion [mis-labeled. It should be memorandum] to Dismiss, Background [Facts], The Lease Agreement, at 2-3, Dkt. 74. Bader impermissibly attempts to rely on the declaration and the exhibits for the truth of the matter asserted therein. However, almost all alleged factual statements in Bader's Background Facts controverts pled facts in the FAC, is a new factual allegation not included in the FAC, or a disputed facts for the following three reasons.

First, this lawsuit only concerns *Single Bill*, *Single Unit*" billing of gas and electricity utilities. FAC ¶ 89. The counter-narrative ignores this pivotal distinction. Defendants argue that Minn. Stat. § 504B.215 applies. It does not. This statute applies to *Single Bill, Multiple Units* and thus not relevant. Bader incredulously argues: "[i]n fact, the alleged wrongful Utility Fees are expressly allowed under Minnesota Law. *Persigehl v. Ridgebrook Invs. Lt. P'ship.,* 858 N.W.2d 824, 834-35 (Minn. Ct. App. 2015)…" Dkt. 74 at 8.

Bader knows that Plaintiffs live in a Single Bill, Single Unit environment. Steven Scott Management (affiliate of Bader) and RealPage (AUM) are defendants in this litigation and were defendants in *Persigeh.* It is reasonable to infer they are fully aware of this case. Nonetheless, they mischaracterize *Persigeh.* It reasoned that since the landlord received a single bill from a

public utility provider and thus must apportion that single bill among all residential units (multiple units), the reasonable costs incurred by the apportionment can be charged to all tenants as add-on fees. Bader knows *Persigeh* is not relevant to the instant case, but misdirects.

Furthermore, the FAC is clear that this litigation is not about Single Bill, Multiple Units. The FAC alleges that RealPage and YES Energy are not required to allocate a multi-unit aggregate bill from a utility provider. FAC ¶ 142 – 145.

Bader also implies that the Lease Agreement authorizes tenant payment of 'administrative fees, convenience fees, and late fees since gas and electricity utility fees are purportedly 'utility fees' pursuant to the Lease Agreement. Plaintiffs dispute this. Utility is specifically defined in the Water/Sewer Utilities and Trash Addendum. Dkt. 46-1, page 9 of 11. It specifies:

> In an effort to encourage Residents to be more conscientious about water conservation, and to more fairly apportion the costs of water and sewer usage to individual users, Management is requiring each Apartment/ Townhouse household to agree to pay, in addition to rent due under the Lease, a separate amount to be filled as provided herein, which amounts are due as additional rent, **for the utility services of water, waste, and sewer (herein called "Utilities")**. (emphasis added).

In order words, 'utilities' is a term of art. It does not include electricity or gas. Plaintiffs dispute whether the addendum is even relevant to resolve issues of gas and electricity. Water, waste, and sewer are not even at issue in this litigation. FAC ¶ 156. This is another misdirection.

Plaintiffs also dispute whether the purported Third-Party Addendum under which Defendants argue was another 'consent' for bogus fees, even exists. Even if it does, it was not merged into the Lease Agreement.[4] FAC ¶ ¶ 83-84, 172–175, 181–182, 184–192.

---

[4] The purported Third-Party Agreement was informally requested during pre-complaint communications. It was not produced.

Third, the Welcome Package is disputed. Plaintiffs deny receiving it on move-in. They dispute all inferences that Bader makes which of coursed are premised on receiving it. FAC ¶¶ 175 – 182. The contents of the Welcome Packaged cannot be relied on for the truth of the matter specified herein at this early stage of a motion to dismiss.

Instead of assuming facts pled in the FAC as true, Bader relies on its counter-narrative facts to claim that the Lease Agreement (which is disputed) justifies its two evictions. It thus relies on the Lease Agreement for the truth of the matter asserted therein. It also ignores that the two evictions are alleged to be retaliatory.

At this juncture, the Court has two alternatives: Ignore all factual allegations in the declarations and exhibits that controvert the FAC or alternatively, treat the motion to dismiss as one for summary judgment. Both should be denied.

## B.  PLAINTIFFS PLAUSIBLY CLAIM CONSPIRACY

Civil conspiracy involves a combination of persons to accomplish either an unlawful purpose or a lawful purpose by unlawful means. *Dunbar v. Wells Fargo Bank, N.A.,* 853 F.Supp.2d 839 (D. Minn. 2012). No formal agreement is necessary. *Wright & Associates, Inc., v. Ullrich,* 203 F. Supp. 744 (D. Minn. 1962). A civil conspiracy claim is merely a vehicle for asserting vicarious or joint liability.  *Strei v. Blaine,* 996 F.Supp.2d 763 (D. Minn. 2014). *See also, Cenveo Corp. v. Southern Graphic Systems, Inc.* 784 F.Supp.2d 1130 (D. Minn. 2011).

### 1.  Joint and several liability of co-conspirators

"There are generally two categories of cases where defendants are legally liable to plaintiffs even though they have had no previous contacts with defendants: 1) when the defendant's conduct is the result of a conspiracy; 2) where the plaintiff was injured by joint

10

tortfeasors." *Emig v. American Tobacco Co.,* 184 F.R.D. 379 (D. Kansas 1998).

Co-conspirators are jointly and severally liable for illegal activities of other co-conspirators, including prior acts before joining the conspiracy. *Scheele v. Union Loan & Finance Co.,* 274 N.W. 673, 678 (Minn. 1937); *See also, Silliman v. Dobner,* 165 Minn. 87, 205 N.W. 696 (1925).

## 2. <u>Meeting of the Minds</u>

A plaintiff asserting a conspiracy claim, therefore, must allege sufficient facts to suggest a "meeting of the minds" to participate in unlawful activity among the alleged conspirators. *K&S P'ship v. Cont'l Bank, N.A.,* 952 F.2d 971, 980 (8th Cir. 1991); *Manis v. Sterling,* 862 F.2d 679, 681 (8th Cir.1988). This is often difficult, as "conspiracies by their nature usually are clandestine"—plaintiffs, therefore, typically are not "in a position to allege with precision the specific facts giving rise to the claim." *Stephenson v. Deutsche Bank AG,* 282 F.Supp.2d 1032, 1070 (D.Minn. 2003) (Kyle, J.) (quoting *White v. Walsh,* 649 F.2d 560, 561 (8th Cir.1981))...While conclusory allegations may not suffice to state a claim, the Court must be cautious to avoid making findings or assumptions of fact without a complete factual record, and plaintiffs must not be expected to adduce evidence without having had the opportunity for discovery. The crucial inquiry, therefore, is what inferences naturally arise from the facts that plaintiffs have pled taking all facts in the Amended Complaint as true.

*Buetow v. A.L.S. Enterprises, Inc.,* 564 F.Supp.2d 1038 (D. Minn. 2008).

A genuine issue of material fact on the 'meeting of the minds' preclude summary judgment on the conspiracy claim. *American Bank of St. Paul v. TD Bank, NA,* Civil No. 09-2240 ADM/TNL, 2011 WL 1810643 (D. Minn. May 09, 2011). Plaintiffs pled some aspects of 'meeting of the minds" on information and belief. Some evidence is solely in the possession of Defendants. It is premature for the court to decide this issue without Plaintiff engaging in discovery and an opportunity to present this evidence to the Court for a decision on the merits.

## 3. **Pled Allegations of the Conspiracy**

The FAC sufficiently pled a conspiracy agreement (FAC, ¶¶ 72 – 78), the who, what

where, when and why (FAC ¶ 151 – 167), and facts applied to Plaintiffs (FAC ¶ ¶  94 – 274) which comprises the bulk of the FAC.

The FAC pled injuries. FAC ¶ 137. The FAC pled that Plaintiffs paid the disputed bogus fees. *Id.* ¶ ¶ 200, 229. The FAC pled injuries relative to the allegations that the evictions were retaliatory. *Id.* ¶¶ 146-149.

### C. PLAINTIFFS PLAUSIBLY CLAIMS FDCPA VIOLATIONS

#### 1. Requirements of FDCPA

As explained by Judge Tunheim in *Klein v. Stewart Zlimen & Jungers, Ltd.,* 29 U.S. Dist. Lexis 361 (D. Minn. 2017):

> [A]n FDCPA claim must meet three elements: (1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.

*Id.* at * 8.

"The FDCPA is designed to protect consumers from abusive debt collection practices and to protect ethical debt collectors from competitive disadvantage." *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1054 (8th Cir. 2002); 15 US.C. § 1692(a). "The FDCPA also contains **general** prohibitions on 'conduct the natural consequence of which is to harasses, oppress, or abuse any person' (15 U.S.C. § 1692d), the use of 'any false, deceptive, or misleading representation or means' (15 U.S.C. § 1692e), and any 'unfair or unconscionable means to collect or attempt to collect a debt' (15 U.S.C. § 1692f)." Id. (emphasis added).

The FDCPA also contains **specific** subsections under each of the general prohibitions that identify specific conduct that "is a violation" of the FDCPA. See *Haney v. Portfolio Recovery Associates, LLC.,* 895 F.3d 974, 981 (8th Cir. 2016) [5]

*Associates, LLC.,* 895 F.3d 974, 981 (8th Cir. 2016) [5] ("In addition to these general prohibitions, the FDCPA sets forth several specific examples of prohibited actions."). There are roughly 30 specifically enumerated violation provisions of the FDCPA. Three distinct subsections are relevant to this motion. 15 U.S.C. § 1692e provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

15 U.S.C. § 1692e further provides:

> Without limiting the general application of the foregoing, **the following conduct is a violation of this section:** * * *

>> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. * * *
>> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

 (emphasis added). 15 U.S.C. § 1692f provides:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

15 U.S.C. § 1692f(1) provides:

> Without limiting the general application of the foregoing, **the following conduct is a violation of this section:**

>> (1)The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(emphasis added). 15 U.S.C. § 1692k(a) provides that "any debt collector who fails to

---

[5] The Lexis version of Haney v. Portfolio Recovery Assocs., L.L.C., 895 F.3d 974 (8th Cir. 2016) is incomplete. By stipulation, the original panel decision was "vacated and an amended opinion is substituted and filed." The Lexis version, however, does not have the final version.

comply with any provision of this subchapter with respect to any person is liable to such person . . ."  A single violation of the FDCPA is sufficient to expose a defendant to liability for statutory damages. *See Hartley v. Suburban Radiologic Consultants, Ltd.,* 295 F.R.D., 357, 373 n.5 (D. Minn. 2013); *Sonmore v. CheckRite Recovery Servs.*, 187 F. Supp. 2d 1128, 1132 (D. Minn. 2001).

### 2.  Engaging in debt collections without a license violates the FDCPA

The FDCPA requires all persons subject to the FDCPA to comply with state laws with respect to debt collection practices:

> This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provisions of this subchapter, and then only to the extent of the inconsistency.  For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.

15 U.S.C. § 1692n (Relation to State Laws).

Defendants violated the FDCPA by failing to have a predicate Minnesota license to engage debt collections. Minnesota Collections Agencies Act specifies that "no person shall conduct business in Minnesota as a collection agency or debt buyer, as defined in sections 332.31 to 332.44 without first applied for and obtained a collection license." Minn. Stat.§ 332.33 Subd. 1. Prohibited activities under section 332.37 include:

> (12) violate any of the provisions of the Fair Debt Collection Practices Act of 1977, Public Law 95-109, while attempting to collect on any account, bill or other indebtedness.

In *Carlson v. First Revenue Assurance,* 359 F.3d 1015 (8th Cir. 2003): the court found that a failure to have a debt collections license plus actual violations of the FDCPA was actionable:

> "The FDCPA was designed to provide basic, overarching rules for debt

collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation.  Only those collections activities that use 'any false, deceptive, or misleading representation or means." Including '[t]he threat to take any action that cannot legally be taken' under state law, will also constitute FDCPA violations. See 15 U.S.C. § 1692e(5); *Picht,* 236 F.3d at 448. In contrast, to the collection agency's action in *Picht*, even if FRA [the debt collection agency] was violating Minnesota law by not having the Seattle lock box licensed (and we have concluded that it was not), that violation would not constitute a false or misleading representation."

*Goetze v. CRA Collections, Inc.,* No. 15-3169 (MJD/FLN), 2017 WL 5891693 (D. Minn Nov. 28, 2017) followed *Carlson:*

> Here, CRA engaged in collection activities without first being licensed to collect debts in Minnesota. Thus, it violated the Minnesota statute making it a misdemeanor to collect debt without proper license or registration. Minn. Stat. § 332.33, subds 1-2. Defendants have hereby violated the FDCPA.  *See, e,g., LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1192 (11th Cir. 2010).

*Id.* at *8. See also, Smith v. LVNV Funding, LLC,* 894 F.Supp. 2d 1045 (E.D. Tenn. 2012).

This factual scenario (no license plus engaging collection activities) was raised in *Moore v. RealPage Utility Management, Inc.,8:20-cv-00927-PX, *1,* No. 2023 WL 2599571 (D. Md. Mar. 22, 2023) "Moore alleges that the Administrative Service Fees requires tenants "to pay RealPage for billing them" and "is a fee imposed on tenants to pay RealPage for its unlicensed activity." *Id.* *3. RealPage argues: "Amended Complaint fails to establish that its alleged unlicensed collection activities caused the injuries averred." *Id.*

It is significant that "RealPage does not dispute that it qualifies as a debt collection agency under the MCLA or that it operated in Maryland without the proper license." *Id.* *4. "RealPage instead argues broadly that the Amended Complaint fails to make plausible that RealPage "lack of a license" caused Morre to suffer damages." *Id.*

In its analysis of damages, the court reasoned that the ("MCALA") prohibits efforts to

engage in unlicensed debt collection activities in violation of the MCALA and Maryland

Consumer Protection Act ("MCPA"), which prohibits "unfair, abusive, or deceptive trade

practices, including the unlawful collection of consumer debts." *Id.* *4. The court found that the

"Amended Complaint makes plausible that the improper service fee flows from RealPage's

circumvention of the licensing requirements. *See Sullivan v. YES Energy Mgmt., Inc.* No. GJH-

22-0418, 2022 WL 4777791, at *2, 6-8 (D. Md. Sept. 30, 2022) (unlicensed collection agency's

$3.00 service fee for billing on behalf of landlord was sufficient damages under the MCDCA

and MCPA)".[6]

   *Moore* is persuasive authority. RealPage is a Defendant in both *Moore* and this case.  In

both cases, RealPage does not have a license to engage in any debt collections. In both cases,

plaintiffs argue violations of the FDCPA and violations of each respective state's consumer

protections statutes. In both cases, the illegal fees were paid. *Moore* held that those payments are

sufficient to constitute actual damages. This Court should make a similar decision.

   YES Energy was sued in Maryland for not having a license, engaging in unlawful

activities under FDCPA, Maryland Debt Collections Act, Maryland Consumer Protection Act

and state claims. *Sullivan v. YES Energy Mgmt.,* No. GJH-22-0418, 2022 WL 4777791 (D. Md.

Sep. 30, 2022). The court denied its Rule 12(b)(6) motion.

   YES Energy argued that it is not a debt collector under the MCDCA, its software billing

program is merely processing payment online and it did not engage in debt collections. Since

there was no clear precedent, the court engaged in statutory and case analysis. The court noted

decisions that found a property manager was a collection agency on behalf of a condominium

association. "[B]ecause the MCALA provides that any person doing business as a collection

---

[6] YEs Energy in *Moore* is also the same defendant in the instant litigation.

agency in the state must have a license to operate, Plaintiff has further plausibly alleged a violation of the MCDCA" *Id.* at *13.

### 3. FDCPA Violations

In this case, RealPage violated four provisions of the Fair Debt Collection Practices Act ("FDCPA"). First, there is no disagreement RealPage (and subsequently YES Energy) does not have a Minnesota license to engage in any debt collections. Nor is there any disagreement that RealPage sent collection communications to Plaintiffs that threatened evictions. Defendants went further with the Landlord actually filing evictions complaints in housing court. As a result, the alleged unlawful threats and evictions are plausible violations of 15 U.S.C § 1692e(10).

Second, the illegal conspiracy to steal and cheat (The Scam) from Plaintiffs by using false and deceptive means to collect any debt or attempt to collect any debt or to obtain information from a consumer also is a plausible violation of 15 U.S.C § 1692e(10).

Third, bogus fees also is a violation 15 U.S.C § 1692f(a)(1) which prohibit unfair or unconscionable means to collect or attempt to collect a debt by collecting interest, fees, charges or expenses incidental to the principal agreement (Rent Agreement) not expressly authorized in the Rent Agreement.

Fourth, RealPage (and subsequently YES Energy) failed to send within five days of its initial communications with a consumer (Plaintiffs) the required written notice regarding the debt and informs the consumer of his or her right to dispute the validity of the debt, and other 'pre-Marinda" notices in violation of 15 U.S.C § 1692g(a) and (b).

### 4. RealPage Threatened Illegal Evictions

There is no serious dispute that RealPage sent a communication on March 21, 2023

that threatened evictions:

> Portions of your account are 60 days past due.  In order to make your account current, you must immediately mail a check made payable to RealPage to P.O. Box 6436, Carol Stream, IL 60197-6436 in the amount referenced above. **Failure to do so may result in the refusal of your next rent payment, and commence of eviction proceedings."**

FAC, ¶ 222, and Exhibit 11. (emphasis added). Imbedded in the 'rent due' for prior months and currently due charges are bogus fees. Defendants admit the communications are debt collection communications:

> The Recovery Fees are **for collections** on behalf of CenterPoint Energy for non-registration. The 'bill" from CenterPoint is included in the AUM RealPage invoice along with their $8.00 recovery fee **for the collection's activity** for non-registration. (emphasis added).

FAC, ¶ 227, Exhibit 13.

The FAC pled: there is no serious dispute that Defendants froze Plaintiffs' on-line rent payment portal.

> On or about April 18, 2023, Landlord posted on Tenants' door another notice demanding all amounts specified on the RealPage billing invoice be paid. The notice further specified that in the event those payments were not made in 24 hours, Landlord will freeze Tenants access to its on-line portal to pay the next month's rent, and further threatened immediate eviction for not paying rent.
> Tenants attempted to log-on to portal to pay rent on March 23, 2023. The following notice popped up on Tenant's computer screen that the rent on-line portal was frozen:
> > This account does not allow on-line payments. Please contact your Property Manager for assistance.

FAC, Exhibit 14. The FAC pled that Tenant/Plaintiffs paid the bogus charges. Although disputed, these payments gave Plaintiffs access to the rent portal to pay future rent payments.

FAC, ¶ 200.

The FAC pled that the Landlord filed an eviction complaint:

About two months after the Landlord and Scott Management received notice of bogus fees and claims for disability discrimination in housing and discrimination in religious housing and on June 16, 2023, Landlord served Notice of Filing of Eviction Complaint  (Eviction Complaint 1). File No. 27-CV-HC-23-4637, Housing Court, Hennepin County.

FAC, ¶ 239. The FAC pled that the Landlord filed a second eviction complaint. FAC, ¶ 248-249.

The FAC pled that the eviction complaints filed in Housing Court misled the court by NOT specifying the reasons for the alleged non-payment of rent -- the Landlord's illegally freezing of the tenant's on-line portal to pay rent. FAC ¶ 198-99. This allegation also is actionable under the FDCPA. In *Kowouto v. Jellum Law, P.A.,* 22-cv-2655 (WMW/LIB), 2023 WL 3435118 (D. Minn. May 12, 2023), the court reasoned:

Jellum Law contends that it did not violate the FDCPA because any "false, deceptive, or misleading statements that it made, were directed at the state district court and were not directed to Kowouto.  This argument is unavailing. Whether the representation made to a court in an eviction action was "false, deceptive, or misleading" so as to impose liability under the FDCPA is a fact-intensive determination.

*Id.* at 8.

## 5. RealPage did not Provide Pre-Marinda Warnings

The FAC alleges RealPage and YES Energy communications fail to conform to statutory requirements on content, format, required notices and the like. FAC ¶ 136. In addition, the second billing statement (and all subsequent billing statements) did not include any statutorily required notices. FAC ¶ 210.

## 6. RealPage and YES Energy are Debt Collectors

The United States Supreme Court articulated two separate means of satisfying the "debt collector" requirement of the FDCPA. *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017) (citing §1692a(6)), which provides:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

The Eighth Circuit Court of Appeals recently rejected debt buyer's efforts to escape the first, or "principal purpose" definition of "debt collector." *See Reygadas v. DNF Assocs., LLC*, 2020 U.S. App. LEXIS 38989, *9-10 (8th Cir. December 14, 2020) ("The argument simply ignores the 'principal purpose' definition, which applies to 'any business --which obviously includes a debt buyer such as DNF -- whose 'principal purpose . . . is the collection of *any* debts.)

The FAC plausibly alleges that RealPage regularly collects debts by regularly sending out mails or emails:

> "RealPage is a co-conspirator and until it was replaced by YES Energy, as another co-conspirator) regularly and continuously engaged in illegal collections with Plaintiffs and members of the Putative Class through mail, email, and chat, and transmits thousands of monthly illegal communications pursuant to Minnesota residential leases and addenda executed by Minnesota resident in Minnesota."

FAC, ¶ 59.

Additionally, and for "tenants that reside at the same complex where Plaintiffs reside, RealPage and YES Energy regularly and routinely send by email or U.S. Mail about 1,812 annual illegal collection communications and receives payments for those illegal activities." FAC, ¶ 61. "Assuming these 85 complexes each have about 125 residential apartments ad townhomes units on average, RealPage and YES Energy regularly and continuously send out about 127,500 annual illegal collection communications to Plaintiffs

and the Putative Class through the Internet and U.S. mail." FAC, ¶ 66. [7]

### a. Bona Fide Fiduciary Exemption is not Applicable

Preliminary, it is premature for the Court to decide on the applicability of the bona fide fiduciary exemption on a motion to dismiss. The only 'fact' presented by RealPage is an 'argument' in its memorandum: "RUM [RealPage] is in a contractual relationship with Plaintiffs' property manager, under which it has the responsibility to send statement to and receive payments from tenants, ultimately on behalf of the property manager." Dkt. 78 at 12. However, RealPage fails to explain **how its admitted** contractual relationship, as a matter of law, is magically transformed into a bona fide fiduciary relationship. The contract is not before the Court. Its contents require speculation. At the stage of a motion to dismiss, it requires speculation of facts not in the FAC.

> The **extent and nature of the services actually performed** by Defendant for the Association constitute a "genuine dispute as to [a] material fact," which precludes summary judgment as to whether Defendant's debt collection activities were merely "incidental" or in fact "central" to its fiduciary duties. See Fed. R. Civ. Proc. 56(a); *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505 (summary judgment will be denied if "reasonable minds could differ as to the import of the evidence") (emphasis added).

*Turner v. Haw. First Inc.,* 903 F.Supp.2d 1037 (D. Haw. 2012).

To trigger the 'incidental to a bona fide fiduciary obligation under 15 U.S.C. § 1692a(6)(F)(i), defendant must be a fiduciary and its debt collecting activities must be "incidental" to its fiduciary obligations. *Walker v. CMG Mortg.,* Civil Action 21-5381, 2021 WL 5647994 (E.D. Pa. Aug 09, 2022). Debt collection activities are incidental if they are not "'central' to, or the 'primary purpose of,' an entity's fiduciary obligations." The *Walker* court

---

[7] Although not explicit, Bader infers that it is a 'creditor' not subject to the FDCPA. It ignores joint and several liability as a co-conspirator. More to the point, Plaintiff does not have access to the contract between Bader/Scott Management, Inc. and RealPage/YES Energy to ascertain the status of creditor or 'debt origination."

explained:

> "Here, though Plaintiff has alleged that Cenlar [the collection agency] engaged in activities other than debt collection, it would be premature, at this stage in the proceedings, to determine whether Cenlar's debt collecting activities were "incidental" to its other responsibilities. *See Muir v. AM Sols, LLC,* 2019 WL 3530521 (E.D. Pa. Aug. 1, 2019) (finding at the motion to dismiss stage that the defendant's debt collection activities were central, not incidental, to its fiduciary duty to the lender because courts must construe evidence in plaintiffs' favor and accept allegations by plaintiffs about defendant's activities as true). As such, Defendant's motion to dismiss, to the extent premised on this exception, is denied."

*Walker Id.*

### b. Fiduciary Relationship is defined in Minnesota

"In determining whether the debt-collection efforts were "incidental to a bona fide fiduciary obligation, " at least some courts have looked to state law to determine whether a fiduciary duty is owed. *See, e.g., Harris v. Liberty Cmty. Mgmt., Inc.,* 702 F.3d 1298, 1302 (11th Cir. 2012) (consulting Georgia law)." *Cornell v. HOA Mgmt.*, 3:21-cv-298, 2021 WL 5647994 (E.D. Tenn. Dec 01, 2021).  Minesota has a Uniform Fiduciaries Act, Minn. Statute Section 520.01 et seq. Fiduciary is defined:

> "Fiduciary" includes a trustee under any trust, expressed, implied, resulting or constructive, executor, administrator, guardian, conservator, curator, receiver, trustee in bankruptcy, assignee for the benefit of creditors, partner, agent, officer of any corporation public or private, public officer, or any other person acting in a fiduciary capacity for any person, trust, or estate.

Minn. Stat. Section 520.01 Subd. 3.

Fiduciary duties arise out of a special relationship involving trust and confidence. *Carlson v. Sala Architects, Inc.,* 732 N.W.2d 324, 330-31 (Minn. Ct. App. 2007). It also arise when trust and confidence in one party results in superiority and influence over another party. *Toombs v. Daniels,* 361 N.W.2d 801, 809 (Minn. 1985). When one party relies on

superior knowledge of another, fiduciary relationships have also been found. *See e.g.*

*Norwest Bank Hastings v. Clapp,* 394 N.W.2d 176 (Minn. Ct. App. 1986).

### c.  RealPage's Contract did not create a Fiduciary Relationship

In contrast to duties that involve trust and confidence, contractual relationships do not

generally give rise to a fiduciary relationship.[8] In *Faith Bible Christian Outreach v. Warner,*

201 F.3d 1020 (8th Cir. 1999), the parties entered into a lease agreement. One party to the

lease claimed the other breached an fiduciary duty by selling the land to a third-party. The

court found no fiduciary relationship because the "basic relationship here is between

landlord and tenant.  The lease, both originally and in its present incarnation, was an arms'

length transactions." *Id*. at 1022. *See Werner v. Hoffman,* 5 F.3d. 1170 (8th Cir. 1993) (The

termination of the lease was a breach of contract, which was dischargeable in bankruptcy in

contrast to a breach of a fiduciary relationship). *See also, Long, In re,* 774 F.2d 875, 878-79,

13 C.B.C.2d 1036 (8th Cir. 1985) (Although the issue presented was whether a loan with a

commercial bank was dischargeable as a breach of a fiduciary, "[i]t is the substance of the

transaction, rather than the labels assigned by the parties, which determines whether there is

a fiduciary relationship for bankruptcy purposes" … finding that the relationship was more

contractual than fiduciary, discharging the loan).

In *Cornell,* an arm's length commercial transaction is not a fiduciary relationship:

> After reviewing the management agreement in detail, the court also affirmed
> the lower court's finding that no confidential relationship had been formed.
> Id. at *10 ("Instead, the evidence reveals that the parties were merely

---

[8] In re *Shahrokhi,* 266 B.R. 702 (B.A.P. 8th Cir. 2001) is insightful. The court was asked to decide whether a car rental agreement constituted a fiduciary relationship within the meaning of bankruptcy to exempt a debt from discharge. After finding that there was no expressed or technical trust, the court looked to the "broad, general definition of fiduciary – a relationship involving confidence, trust, and good faith". *Id.* at 707. The court reasoned that "a merely contractual relationship is less than what is required to establish the existence of a fiduciary relationship." *Id.* at 708. The court found that the car rental lease agreement did not create an express or technical trust between the debtor and creditor but was merely contractual, not fiduciary.

engaged in an arm's length business transaction for which no fiduciary status is conferred." (citations omitted)); cf. *Briggs & Tratton Power Prods. Grp., LLC v. Osram Sylvania, Inc.,* No. W2016-01799-COA-R3-CV, 2017 WL 5992361, at *11 (Tenn. Ct. App. Dec. 4, 2017) (holding that the relationship between property-management company and the commercial lessee of the property was not fiduciary or confidential in nature because "the parties were dealing with each other in an arm's length commercial transaction").

*Id. at *10.* The FAC alleges: RealPage is a third-party provider. FAC ¶ 53; RealPage and YES Energy "never owned any claim for payment or delinquent or outstanding amount due' *Id.* ¶ ¶ 124-125; neither are "related by common ownership with landlords or property managers. *Id.* ¶ ¶ 126-127. Without the contract between the Landlord and RealPage, the Court is left to speculate on whether RealPage "acquired" a debt , and if and when acquired, whether the debt was in due, in default or outstanding before it was allegedly acquired.

### i.    <u>Special Circumstance Exist to Disclose Omitted Facts</u>

The FAC ¶ 178 pled that bogus fees were charged, including a 'Convenience Fee" of about $5.00, a "Utility Recover Charge" of about $8.00 to $16; and "One-time Activation Fee" of about $12.00. The FAC ¶ 347 pled: "The Landlord has a statutory duty to specify all fees and all other charges that a tenants [sic] is responsible for and breach [sic] that duty to Plaintiffs by failing to list all of the bogus fees that it charged pursuant to the lease, and as a direct result, Plaintiffs incurred injuries and damages as set forth herein".

The Landlord breached Minn. Stat. § 504B.120 Subd. 1, which specifies that "A Landlord must disclose all nonoptional fees in the lease agreement. The sum total of rent and all nonoptional fees must be described as the Total Monthly payment and be listed on the first page of the lease." As analyzed below, this statutory duty constitutes a 'special circumstance' to disclose omitted facts.

RealPage misconstrues and misapplies when 'special circumstances' require disclosure of

omitted facts as articulated in *Graphic Comme'ns Local 1 B Health & Welfare Fund v. CVS Caremark Corp.,* 880 N.W. 2d 682 (Minn. 2014). Dkt. 78 at 21. The issue is whether "the party concealing the fact must have been under a legal or equitable obligation to communicate the fact to the other party. *CVS Caremark Corp. at 695.*[9]

The concealed fact is the mandatory requirement to disclose nonoptional fees. *CVS Caremark Corp*. provides examples of the duty to disclose. First: "one who has special knowledge of material facts which the other party does not have access may have a duty to disclose those facts to the other third party. *Id. at 695. T*he Parties dispute whether Plaintiffs have access/knowledge that bogus fees are optional. The FAC pled:

> "Pursuant to the Scam, Defendants created boiler-plate lease agreements that failed to specify all fees on the first page of residential leases, pursuant to Minnesota statutes, and created terms and conditions that are deceptive, misleading and confusing to trick tenants into believing that they had no right or option but purportedly 'consent' to the bogus charges."

FAC ¶ 72. The FAC also pled: "Gas and electricity utility carrier monthly billing statements sent directly to a tenant do not include bogus charges that are specified in the above paragraph." *Id.* at 179. The FAC additionally pled: Defendants omitted to disclose this key and material term (the free option):

> Defendants intentionally, deliberately, and maliciously omitted material facts to Plaintiffs and the Putative Class when executing the lease. They omitted existing and material facts known to Defendants – a tenant can get a billing statement from their gas and utility carrier at no cost. The combined this nondisclosure with disclosure of other material facts that mispresent, mislead, and deceive tenants of their legal rights which are in part specified in the lease agreement and addenda, the Third-Party Agreement, and in verbal discussions.

---

[9] Special knowledge or special information was also analyzed in *Taylor Inv. Corp. v. Weil, 169 F.Supp. 1046, (D. Minn. 2001).* The court observed that the parties engaged in an arm's length business transactions and there was no duty to disclose. In the instant case, the Lease Agreement is a consumer lease. As explained below, The MCFA is designed to protect consumer against unequal bargaining power present in consumer transactions.

FAC ¶ 153. The FAC pled: Defendants failed to disclose the 'free' option of billing, because "When executing the lease and purported Third-Party Agreement, Defendants know that most, if not all tenants, would not agree to RealPage monthly billing statement (with bogus fees) but opt for free billing statements from their gas and electricity utility carrier and not incur bogus charges that are billed and collected by RealPage." FAC ¶ 188.

This leads to the second example specified in *CVS Caremark Corp*: "A person who speaks must say enough to prevent the words communicated from misleading the other party." *CVS Caremark Corp. at 695.* The court observed that special knowledge of material facts is a fraud theory that it has rarely addressed.[10] *Id.* at 698. It reasoned what was stated is not actionable "unless the defendants omits material facts that render the words spoken false, deceptive or misleading". *Id.*

The Lease Agreement includes a half-truth, only one side of a coin. It specifies that fees are imposed, (it also fails to disclose how much). The other side of the coin is it fails to disclose that tenants can choose NOT to receive RealPage billing and thus avoid bogus fees. By disclosing one side of the coin, Defendants had a legal and equitable duty to disclose the other side. Stating one-half of the coin is false, deceptive, and misleading. It thus invokes special circumstances to disclose the choice to avoid the bogus fees.[11]

One flaw in Defendants arguments is that the conspiracy agreement is intentionally designed to only tell a half-truth. Had the Lease Agreement also specified that tenants could

---

[10]  t is noteworthy that the court was not faced with claim of conspiracy to steal and cheat in part because the lease agreement is deceptive, misleading and false.

[11] Included in the special circumstances arguments raised by RealPage, is that a MCFA claim must include allegations of reliance, relying on a Minnesota Supreme court decision in 2001, *Grp. Health Plan, Inc., v. Philip Morris Inc.,* and also that MCFA requires heightened pleading standard of F.R.C.P. 9(b). Dkt. at 20. This is not a correct state of the law as clarified by the Minnesota Supreme Court in its 2019 decision in *Minn. Sch. of Business* cited *supra.* The court made clear that the "legislature's intent is evidenced by the *elimination* of elements of common law fraud, such as proof of damages or reliance on misrepresentation." (emphasis in original) *Id.*

decline RealPage billing and thus avoid the bogus fees, Plaintiffs would have opted to receive billing statement from their public utility carriers, which do not include the bogus fees.  But then, the disclosure would have defeated the whole purpose of The Scam - – to steal and cheat from tenants. As a result, there are special circumstances (both legal and equitable ) to disclose.

The statute of limitation argument is premature. The FAC alleges FDCPA claims for violations within the one-year statute of limitations for a FDCPA. However, FDCPA violations are relevant to fraud claims. Defendants appears to be raising the scope of damages, not validity of the FDCPA claim. *See Universal Film Exchanges v. Swanson,* 165 F.Supp. 95 (D. Minn 1956) (statute of limitations of conspiracy based on fraud is 6 years).

## D. PLAINTIFFS PLAUSIBLY CLAIM FRAUD

The Minnesota Supreme Court recently clarified the standard of proof required to establish a claim under the Minnesota Consumer Fraud Act (MCFA), focusing on the required 'causal nexus', between illegal conduct and injury. It also distinguished the required level of factual allegations that are required to be pled for statutory fraud and common law fraud.  *State v. Minn. Sch. of Bus., Inc.,* 935 N.W. 2nd 124 (Minn. 2019):

> The Legislature enacted the MCFA to help protect consumer against the unequal bargaining power present in consumer transactions. *Ly v. Nystrom,* 615 N.W.2d 302, 308 (Minn. 2000).  Along with the DTDA [Uniform Deceptive Trade Practices Act], these statutes "are medial in nature and are to be liberally construed in favor of protecting consumers." *Alpine Air Prods., Inc.*, 490 N.W.2d at 892; *see also State by Humphrey v. Alpine Air Prods., Inc.*, 500 N.W.2d at 788, 790 (Minn. 1993) ("In passing consumer fraud statutes, the legislature clearly intended to make it easier to sue for consumer fraud that it had been to sue for fraud at common law. The legislature's intent is evidenced by the *elimination* of elements of common law fraud, such as proof of damages or reliance on misrepresentations." Additionally, the elements of MCFA claims are distinct from common-law fraud actions and broaden the relief against fraud available to consumers. The

> MCFA "reflects a clear legislative policy encouraging aggressive prosecution of statutory violations' and thus should be 'generally very broadly construed to enhance consumer protection.'"

*Id.* at 133 (emphasis in original).

> We held that a private plaintiff suing for a violation of the MCFA, under Minn. Stat. § 8.31, subd. 3a, need not "plead [ ] and prov[e] traditional common law reliance.,". *Id.* at 13. Instead, we stated that an individual plaintiff must establish "a causal nexus between the conduct alleged to violate the [MCFA] and the damages claimed." *Id.* at 14. We also observed that an element of individual reliance is embedded in the causal nexus requirement because a fraudulent or misleading statement cannot by its nature cause harm unless the statement 'had some impact on' inducing the individual plaintiff's action. *Id.*

*Id.* at 134. *See also, Hudock v. LG Elecs, U.S.A.,* 12 F.4th 773 (8th Cir. 2021) (the causal nexus requires proof between the defendant's acts and the claimed damages).[12]

To reach the bar of plausibility for statutory fraud, Plaintiffs is only required to sufficiently allege a nexus between Defendants illegal violations (deceptive and misleading practices) and damages (paying the bogus fees). Defendants reliance on traditional contract law (which assumes, for example, arm's length negotiations) is not applicable in consumer contracts/leases where there is unequal bargaining power. Plaintiffs plausibly pled a nexus between violations and damages for MCFPA claim. FAC ¶ ¶ 364-67.

## E. PLAINTIFFS PLAUSIBLY CLAIM BREACH OF CONTRACT

A consumer contract has different requirements for plausibility and burden of proof from a traditional contract. Defendants rely on traditional contract analysis is misdirection.

### 1. <u>The Lease Agreement is unconscionable.</u>

MCFPA prohibits: "The act, use or employment of any person of any fraud, unfair or unconscionable practice, false pretense, false promise, misrepresentation, misleading

---

[12] Defendants reliance on cases prior to *Minnesota School of Business on the burden of proof is misplaced.*

statement or deceptive practice with the intent that others rely thereon in connections with

the sale of any merchandise, whether or not any person has in fact been misled, deceived, or

damaged…." Minn. Stat. § 325F.69 Subd. 1. Unconscionable is statutorily defined:

> For purposes of this section, an unfair method of competition or an unfair or
> unconscionable act or practice is any method of competition, act, or practice
> that: (1) offends public policy as established by the statutes, rules or common
> law of Minnesota; (1) is unethical, oppressive, or unscrupulous,; or (3) is
> substantially injurious to consumers.

*Id.* Subd. 8. A misrepresentation made or deceptive practice used in connection with the sale of

merchandise is prohibited. *Ly v. Nystrom*, 615 N.W.2d 302 (Minn. 2000).  Where a statute was

enacted to protect the public against a specific harm such as fraud or to safeguard the public

health or morals, any contract or agreement in violation thereof is ordinarily void. *Vercellini v.*

*U.S.I. Realty Co.,* 196 N.W. 672 (Minn. 1924).

> Defendants waiver argument is misguided.

> [W]hen the waiver is found in a consumer contract of adhesion in a setting
> in which disputes between contract parties predictably involve small amounts
> of damages, and when it is alleged that the party with the superior bargaining
> power has carries out a scheme to deliberately cheat a large numbers of
> consumers out of individually small sums of money, then … the waiver
> becomes in practice the exemption of the party "from responsibility for [its]
> own fraud, or willful injury to the person or property of another." Under these
> circumstances, such waivers are unconscionable under California law and
> should not be enforced.

*Discover Bank v. Superior Court,* 36 Cal. 4th 148, 162 (2005).

The FAC alleges: "Tenants are required to execute a take-it-or-leave it lease, FAC ¶ ¶

81,154, 182, 183-84.

## 2.  Plead Allegations of Breach of Contract

The FAC plead several breaches of contract by the Landlord.[13]

---

[13] A recurring theme in RealPage's argument is the failure to come to terms with the reality that as a co-conspirator, it is

### a.  Illegal Eviction for Burning Incense

The FAM pled at ¶ ¶ 256 – 59 that although the Lease Agreement specifically authorizes the burning of incense, the Landlord relied on burning of incense as one of the reasons to file eviction notices. The FAM pled that the evictions were retaliatory. Id.

### b.  Illegal Eviction for not paying utility fees

The FAM pled at 254-55 that not paying utility fees was alleged as a non-material breach that did not warrant an eviction.  The FAC pled at ¶ 272 that filing and serving the eviction complaints had an ulterior and illegal motive, because not paying the utility fees is not a material breach since only 5 late payments constitute a material breach. At a minimum, the FAC pled at ¶ ¶ 193–195, that the Lease Agreement is ambiguous.

### F.  PLAINTIFFS PLAUSIBLY CLAIM ABUSE OF PROCESS

"Under Minnesota law: The essential elements of an action for abuse of process are only two, namely, (a) the existence of an ulterior purpose, and (b) the act of using the process to accomplish a result not within the scope of the proceeding in which it was issued, whether such result might otherwise be lawfully obtained or not. "The gist of the action, then, is the misuse or misapplication of legal process to accomplish an end other than that which the process was designed to accomplish." *Bew-Bel Const. Corp. v. Gondek,* 291 Minn. 386, 389, 192 N.W.2d, 812, 814 (Minn. 1972); *Young v. Klass,* 776 F.Supp.2d 916, 924 (D. Minn. 2011); *Dunham v. Roer*, 708 N.W.2d 552, 571 n.5 (Minn. Ct. App. 2006). *See also, Nygard v. City of Orono,* 39 F.4th 514 (8th Cir. 2022).

---

jointly and severally liable for the illegal conduct of other co-conspirator, including activities that it did not participate in.

Minnesota has scant law to provide guidance on what actually constitutes ulterior motive.

Other states view extortion as ulterior motive. A good definition is found in *Kehoe v. Aronson,*

2004 Ohio 1875, C.A. 30577 (Ohio App. May 15, 2024) ("Ulterior purpose" or "motive" has

been interpreted as "an attempt to gain an advantage outside the proceeding, such as payment of

money or surrender of a claim, using the process itself as the threat." Thus, "[t]he defendant

must use the process in a way that perverts the legal proceeding." *Id.*

> Abuse of process has been described by the Supreme Court as the "use of
> legal process as a tactical weapon to coerce a desired result that is not the
> legitimate object of the process." In order to state a cause of action for abuse
> of process it must be alleged that the defendant used a legal process to
> accomplish a purpose for which the process was not designed. The classic
> example is the initiation of a civil proceeding to coerce the payment of a
> claim completely unrelated to the cause of action sued upon. It is not enough
> that the defendant had bad or malicious intentions or that the defendant acted
> from spite or with an ulterior motive. Rather, there must be an act or threat
> not authorized by the process, or the process must be used for an illegitimate
> aim such as extortion, blackmail, or to coerce or compel the plaintiff to take
> some collateral action.

*Orange Stones Co. v. City of Reading & Fred Lachat,* 87 A3d 1014, 1025 (Pa. Commw. Ct.

2014). *See also Cross Creek Ranch, LLC v. Crotts,* Civil Action 23-cv-00050-RM/JPO, 2024

WL 1156601 (D. Colo. March 14, 2024) ("Ordinarily, the improper purpose element "takes the

form of coercion to obtain collateral advantage, not properly involved in the proceeding itself,

such as the surrender of property or the payment of money, by the use of the process as a threat

or a club."). The *Crotts* court provided examples: "Examples of improper use of process include

recording a lis pendens or obtaining a writ of replevin as leverage to demand money, property,

or some other advantage in exchange for a release or dismissal of the action." *Yadon v. Lowry,*

126 P.3d 332, 337 (Colo.App. 2005) (citing *Salstrom v. Starke,* 670 P.2d 809, 811 (Colo.

App.1983) (lis pendens filed not to protect legitimate property interest but to prevent a sale to

any other party and to coerce property owner to consider previous offers), and *Aztec Sound Corp. v. W. States Leasing Co.*, 32 Colo.App. 248, 252, 510 P.2d 897, 898 (1973) (writ of replevin used not to regain property, but to recover monies not required by contract).

### 1. Pled Allegations of Abuse of Process

Bader argues the abuse of process claim fails because the FAC fails to plea an ulterior motive.  However, the following was pled in the FAC:

> 241. The filing and serving of this first eviction complaint had ulterior and improper motives: to find cause to evict Plaintiffs for alleged material breaches of the lease agreement, to extort current and future bogus payments of bogus fees, to evict Plaintiffs for giving the Landlord notice of claims for bogus fees, including their individual and class actions claims, and to implement The Scam to steal and cheat from the Plaintiffs and the Putative Class.

FAC ¶ 241, see also, ¶¶ 250, 270. The FAC also pled that Defendants extorted Plaintiffs by filing eviction complaints:

> 370. Defendants used the regular and customary legal process of filing and serving an eviction complaint against Plaintiffs with several ulterior motive. First, the eviction complaint is an tool of extortion to implement and enforce the conspiracy of entering into an agreement (The Scam) to steal and cheat from Plaintiffs as more fully specified in the Complaint.

> 371. Second, filing and serving the eviction complaint is a misuse or prevision of the legal process in part because nonpayment of rent (the primary reason for the eviction complaint) is a fraud on Plaintiffs and Housing Court. There is no true and traditional nonpayment of rent – in that Plaintiffs did not and could not pay rent. The fraud is that Plaintiffs tried desperately to pay rent but was prevented from doing so because Defendants that shut-down Plaintiffs' access to the rental portal which made it impossible to pay rent. The fraud includes that the alleged nonpayment of rent is a pretext to file and serve the eviction complaint. In truth, the filing and serving of the complaint is part of the fraud and extortion to evict for not paying the bogus utility fees.

> 372. Third, the filing and serving of the complaint had an ulterior and illegal motive because there was in part no material breach to the lease. A late payment of rent is not material breach to justify an eviction complaint. The

> lease requires five late payments of rent within a 12-month period before late
> payments evolve from a non-material breach into a material breach. Plaintiffs
> were served the bogus eviction complaint after being just
> five days late on rent and without any history of prior late payments in rent.
> With this knowledge and nonetheless filing the eviction complaint,
> Defendants intentionally and fraudulently misuse the legal process.

FAC ¶ 370-72

Plaintiffs thus pled sufficient factual allegations to plausibly make a claim for abuse of

process. In gist, Defendants improperly used the lawful eviction process for an ulterior and

illegal purpose – extort tenants to pay bogus utility fees.

Non-payment of **utilities** is not failure to pay rent. The latter is a material breach and for

which evictions is a proper process. This Landlord deliberately and intentionally failed to make

material disclosures to Housing Court, and for good reason. It would likely prompt a Housing

Court Referee to ask whether the lease made non-payment of utilities a material breach,

warranting the eviction of tenants and throwing out of their homes and on the streets. A savvy

tenants would tell the Referee they want to pay the rent but for the Landlord freezing the portal,

making it impossible to do so. This would then reveal The Scam to Housing Court.

Unsophisticated tenants are tricked into believing that the Lease Agreement is legitimate.

They do not know they are being scammed. This conduct by the Landlord and Defendants is

unconscionable and despicable.

## G. PLAINTIFFS PLAUSIBLY CLAIM RETALIATION

In Minnesota, a tenant can assert the defense of retaliation to a landlord eviction

complaint under two statutes and also under the common law. *Cnet. Hous. Assoc., LP v.*

*Olson,* 929 N.W.2d 398 (Minn. 2019). Two are applicable to the instant litigation and further

developed in *Campbell Prop. Mgmt. v. Steiner,* A23-0740, 2024 WL 222499 (Minn. App.

Jan 17, 2024).

The first is a statutory basis under Minnesota Statutes Section 504B.285. To prevail under Minnesota Statutes section, 504B.285, subdivision 2, tenant must show that the landlord intended the termination "as a penalty for the defendant's [tenant's] good faith attempt to secure or enforce rights under a lease" or the laws of Minnesota. Steiner's [tenant] attempt to assert a statutory defense pursuant to section 504B.285, subdivision 2, fails because she only sought to enforce her rights *after* Cambell [landlord] gave her notice to quit.  As a result, Campbell could not have intended the notice to quit as a penalty." (emphasis in original). *Steiner at *6.*

In this litigation, Plaintiffs gave Landlord two notices of bogus fees <u>before</u> the Landlord filed the eviction complaints: on January 11, 2023 and again on May 16, 2023.[14] FAC ¶ 235. The FAC pled that the earlier notice included claims for consumer fraud, deceptive trade practices, unfair collection practices, breach of lease, and improper and illegal utility-based fees including bogus late fees, administrative fees, and other charges. *Id.*

The first eviction complaint was filed on June 16, 2023. *Id.* at ¶ 240. This eviction was preceded by Landlord serving on Plaintiffs on June 6, 2023 Notice of Violation of Lease, Warning of Eviction, and Offer to Accept Promise to Vacate as Mutual Termination of Lease. *Id.* at ¶237. The second eviction complaint was filed on May 22, 2023. *Id.* at ¶ 238.

The FAC pled that disposition of the first eviction was favorable to Plaintiffs. *Id.* at ¶ 246. The second eviction was disposed of at the first appearance in Housing Court. *Id.* at ¶ 252. The Landlord withdrew the eviction complaint. *Id.* The Housing Court Order specified

---

[14] Bader suggest that since Housing Court did not enter an order of eviction, where was no wrongful eviction. It is misdirection. The illegality was in the *filing* of the eviction complaint in Housing Court, which Plaintiff claims was retaliatory. Damages flow from those illegal evictions in the FAC, which is integral to the conspiracy.

that it lacked authority to her Plaintiffs' counterclaims raised. *Id*

The second basis to raise the retaliatory defense is under the common law. To prevail, a residential tenant must prove that a landlord brought a breach-of-lease eviction action based on the tenant's good-faith complaint to the landlord of a material violation of local or state law, residential covenants, or the lease. *Steiner* at *6. The factual allegation pled for Count 8, Retaliation, FAC ¶ ¶ 377- 391 sufficiently pleads plausibility for retaliation.[15]

## H. PLAINTIFFS PLAUSIBLY CLAIM HOUSING DISCRIMINATION

A major flaw in Bader's argument is applying standards and burden of proof for summary judgment, instead of a motion to dismiss.

To state a claim for failure to accommodate under the FHA, a plaintiff must plead:

> (1) the plaintiff is a person with a disability within the meaning of the FHA or a person associated with that individual; (2) the plaintiff requested a reasonable accommodation for the disability; (3) the requested accommodation was necessary to afford the plaintiff an opportunity to use and enjoy the dwelling; and (4) the defendant refused to make the [requested] accommodation.

*Hunt*, 814 F.3d at 1225. *See also, Heimkes v. Fairhope Motorcoach Resort Condo, Owners Assn. Inc.,* Civ Action, 1:22-cv-488 TFM-M, 2023 WL 2392731 (S.D. Ala. Mar. 06, 2023).

> At the pleading stage, the relevant question is whether the complaint provides 'a short and plain statement of the claim' that 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."' Id. [*Hunt v. Aimco Props., L.P.,* 814 F.3d 1213 (11th Cir. 2016)] at 1221 (alteration in original) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). And the complaint must "present[] a plausible set of facts from which we can infer that" Unger has "sufficiently pled [his] claim." Id. at 1225.

*Unger v. Majorca at Via Verde Homeowners Assn.,* 2022 WL 4542348 Sep. 29, 2022);[16] ("… so

---

[15] Bader misses the mark in arguing that Plaintiffs received the requested accommodation because the dog remained in the premises. DKT. 74 at 19. The reality is that the Landlord filed in illegal eviction complaint in Housing Court. In part the Landlord alleged that Plaintiffs violated its 'no pet policy' The Landlord wrongfully denying the accommodation, and then wrongfully relied on the denied accommodation to alleged the Plaintiffs breached the Lease Agreement 'no pet policy.

long as the plaintiff's request 'is facially reasonable, the burden shifts to the defendant, who must prove that the accommodation would nonetheless impose an 'undue burden' or result in a 'fundamental alternation of its program" citing *Shaw v. Habitat for Humanity of Citrus County, Inc.,* 938 F.3d 1259 (11th Cir. 2019)).[17] Finally, *Unger* observed:

> "[A]t the motion to dismiss stage, a court's consideration of defendant's objections and counterproposals is limited to "the four corners of the complaint." *St. George v. Pinellas County,* 285 F.3d 1334, 1337 (11th Cir. 2002) (explaining that, at the motion to dismiss stage, '[t]he scope of review must be limited to the four corners of the complaint…). *Unger* at N4.

The FAC pled very detailed factual allegations of failure to accommodate a dog. FAC ¶ ¶274-299, 392-396. The pled allegations plausibly make a claim for disability discrimination in fair housing.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully requests that the motion to dismiss by Steven Scott Management, Inc., Cedar Pass South, LLC, and Bader Management, Inc., and also the motion to dismiss by RealPage Utility Management, Inc., be dismissed.

 Dated 6/4/2024

s/ Earl Singh
Earl Singh (MN# 0178263)
Singh Advisors, LLC
711 Smith Avenue South
St. Paul, MN  55107
651-647-6250 (phone)
earl.singh@singhadvisors.com

---

[16] Although this is not a published, the court's analysis is helpful. It addressed failure to accommodate in violation of the FHA by a residential tenant and the landlord seeking a motion to dismiss under Rule 12(b)(6).

[17] Bader suggest that Plaintiffs did not establish a FHA disability. The FAC pled the required contents of an ESA letter. FAC ¶ ¶290-92. The FAC pled that first ESA letter was submitted and alleged it was sufficient, but for the Landlord's assertion that it was not 'current' because it was not dated. *Id. at 218.*Bader also suggests that it was 'seeking confirmation' of the ESA. The FAC alleges that it was really playing games, trying to find pretext to evict Tenants. *Id.* ¶ ¶ 279-290.