# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

------------------------------------------------------------------------------------------------------

Eleshea Reid, individually, Michael Matthews, individually, *and on behalf of all others similarly situated,*

Plaintiffs,

v.

RealPage Utility Management, Inc., Stephen Scott Management, Inc., Cedar Pass South, LLC, Bader Management, Inc., YES Energy Management, Inc.

Defendants.

Court File #: 24-CV-00368 (JWB/JFB)

**PLAINTIFFS' MEMORANDUM TO OPPOSE YES ENERGY'S MOTION TO DISMISS**

# TABLE OF CONTENTS

I.  SUMMARY OF ARGUMENT.................................................................................3

II.  STANDARD OF REVIEW.................................................................................3

    A.  Rule 12(b)(6)....................................................................................3

        1. Matters Outside The Pleadings Are Not Considered……………….………..5

    B.  Rule 12(b)(2)…………………………………………………….…………6

III.  ARGUMENT........................................................................................6

    A.  The Court Has Jurisdiction Over YES Energy………………………….……6

        1.  Pled Allegations Of Jurisdiction………………………………..………6

        2.  YES Energy Consented To Jurisdiction........................................7

        3.  Co-conspirators Are Subject To Conspiracy-based Jurisdiction.......................8

        4.  Co-Conspirators Are Jointly And Severally Liable……………..……………11

1

    5.   Juridical linked Jurisdiction Applies To Co-conspirators…………..…...……15

B.  Plaintiffs Plausibly Claim Conspiracy…………………………………………17

C.  Sanctions Are Not Warranted ................................................................................24

D.  CONCLUSION........................................................................................................26

# I.    SUMMARY OF ARGUMENT

YES Energy is registered to do business in Minnesota, with a registered agent and a registered office. This registration is 'consent' to confer Minnesota courts with general jurisdiction. Consent is an independent basis for personal jurisdiction.

It is not relevant whether YES Energy *itself* took any illegal action against the named Plaintiffs or injured them. Under conspiracy-based jurisdiction, a co-conspirator is jointly and severally liable for the prior acts of other co-conspirators before joining the conspiracy in two circumstances: 1) where defendant's conduct is the result of a conspiracy; 2) where a plaintiff is injured by joint tortfeasors. Both circumstances are present in this litigation.

The Court additionally has jurisdiction over YES Energy based on juridical linked jurisdiction. In a class action in which a named plaintiff has not alleged injuries caused by all defendants, a class may be certified when all defendants are linked by a conspiracy or concerted scheme that harms the class.

Sanctions are not warranted under Section 1927. Plaintiffs' claims are supported by good faith arguments to extend, modify or reverse existing law. Nor are sanctions warranted when the court is asked to consider a novel issue or unsettled law. Sanctions are not warranted even when a party allegedly misunderstands or misapplies the law. Additionally, filing a complaint (including an amended complaint) is generally not sanctionable under Section 1927.

# II.    STANDARD OF REVIEW

## A.  Rule 12(b)(6)

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), unlike Rule 12(b)(2), a court only considers allegations in the Complaint. *Nat. Indem. Co. v. Allianz Glob.*

*Risks U.S. Ins. Co.,* 8:23-CV-322, *18, 2024, WL 229425 (D. Neb. Jan. 22, 2024). A cause of action should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff cannot plausibly prove any set of facts in support of the claim for relief. *Schaller Tel. Co. v. Gloden Sky v. Casson,* 5 F.3d. 1141, 1148 (8th Cir. 2002).

In analyzing the adequacy of allegations under Rule 12(b)(6), a court must construe the complaint liberally and afford plaintiff all reasonable inferences drawn from those allegations. *Turner v. Holbrook,* 278 F.3d 754, 757 (8th Cir. 2002). A claim survives if nonconclusory allegations, which must be accepted as true, make it not just 'conceivable' but 'plausible' that a defendant is liable. *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022). A court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminum Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022).

The Third Circuit clarified that in evaluating a 12(b)(6) motion, the complaint need not establish a prima facie case in order to survive a motion to dismiss. *Crawford v. Jefferson Hospital,* Civ. Action No. 20-87, 2020 WL 3447759 (E.E. Pa. June 24, 2020) ("A *prima facie* case is 'an evidentiary standard, not a pleading requirement"). "Instead, plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [plaintiffs'] claims". *Id.* at *8.

A key claim raised in *Crawford* was discrimination. "Although Plaintiff need not establish a prima facie case of discrimination at this stage, "the elements of a prima facie claim

4

of disability discrimination remain the Court's 'analytical guideline[s] in assessing plausibility of [plaintiffs] discrimination claims." *Id. See, Mandala v. NTT Data, Inc.,* 975 F.3d 202, 208 (2d Cir. 2020) ("To state a claim for disparate treatment, a plaintiff need not plead a prima facie case; "enough nonconclusory factual matter to nudge her claim across the line from conceivable to plausible" will suffice.) (cleaned up); *Bonaffini v. City Univ. of N.Y.,* 20-cv-5118, 2021 WL 2206736 (BMC) (E.D. N.Y. June 1, 2021).

### 1. Matters Outside The Pleadings Are Not Considered

> If on a motion under Rule 12(b)(6) or (12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion."

*Nat. Indem. Co.* at *6-7. Review of a decision to treat a motion to dismiss as a motion for summary judgment is abuse of discretion. *Id.*

> "On a motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the facts are drawn "not [from] the pleadings alone, but [also from] affidavits and exhibits supporting or opposing the motion." *Fastpath, Inc., v. Arbela Techs Cor.,* 760 F.3d 816, 820 (8th Cir. 2004). Conversely, on a Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court considers only materials drawn from the pleadings. *See Bauer v. AGA Serv. Co.,* 25 F.4th 587, 589 (8th Cir. 2022").

*Id.* at *1-2.

Materials that contradict allegations in the Complaint cannot be considered. Under a Rule(b)(6) analysis, affidavits cannot contradict the complaint:

> "If, on a motion under Rule 12(b)(6), … matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). However, a court may consider certain outside materials, such as matters of public record, materials that do not contradict the complaint, exhibits attached to the complaint, and materials that are necessarily embraced by the pleadings, without converting the motion into one for summary judgment. *Porous*

*Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999).

*Bank of Montreal v. Avalon Capital Group Inc.,* 743 F.Supp.2d 1021 (D. Minn. 2010). *See also, State ex rel. Nixon v. Coeur D'Alene Tribe,* 164 F.3d 1102 (8th Cir. 1999) (citing *Papasan v. Allain,* 478 U.S. 265, 269, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986).

## B. Rule 12(b)(2)

To survive a Rule 12(b)(2) motion for lack of personal jurisdiction, the plaintiff must establish a  prima facia case that the forum state has personal jurisdiction over the defendant. *Stevens v. Redwing,* 146 F.3d 538, 543 (8th Cir. 1998). In the absence of an evidentiary hearing, the court "must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir. 1991) (citations omitted). The court "may look beyond the pleadings to determine whether personal jurisdiction exists, including reviewing affidavits and other exhibits." *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020).

## III.    ARGUMENT

There are three independent grounds for the court to have jurisdiction over YES Energy: consent, conspiracy-based jurisdiction, and juridical-linked jurisdiction.[1]

## A. The Court Has Personal Jurisdiction Over YES Energy

Jurisdiction is based, in part, on YES Energy's 'consent' to general jurisdiction.

### 1.    Pled Allegations Of Jurisdiction

The FAC pled: "On information and belief, YES Energy, a co-conspirator, entered into a business relationship with Defendant Cedar Pass South, LLC, ("Landlord") and/or Scott

---

[1] Other than jurisdiction, YES Energy essentially seeks dismissal of all counts pled in the FAC, essentially making similar arguments that the other defendants made in their respective motions to dismiss. Instead of repeating opposition to those arguments (specified in Dkt. 91), Plaintiffs incorporate by reference those arguments herein.

Management to replace management services previously provided by RealPage to continue to perpetuate The Scam, as specified herein." FAC ¶ 69. "Upon information and belief, YES Energy, subsequently entered into a business relationship with Bader Management, Inc. to perpetuate the Scan after Landlord's reorganization." FAC ¶ 70.

"RealPage and YES Energy charge many bogus utility-related fees and other illegal charges including: Administrative Fee of $150.00 upon executing the lease; bogus monthly "Admin. Fee" of about $4.40 to $5.00; bogus "Online Convenience Fee" of about $5.00 (RealPage to send a monthly e-bill statement to a tenant); bogus "Late Payment Fee" of about $8.00; and bogus "Utility Recovery Charge" of about $8.00. Exhibits 3 -7." FAC ¶ 93.

### 2. YES Energy Consented To Jurisdiction

YES Energy consented to personal jurisdiction. The court can take judicial notice of public records maintained by the Minnesota Secretary of State.[2] A search for YES Energy Management, Inc. reveals that it is registered as a foreign business corporation (File Number 988220000055). Corporation Service Company is its registered agent. Its registered office is at 2345 Rice Street, Suite 230, Roseville, MN 55113.

Judge Doty summarized that registering to do business in Minnesota is consent to personal jurisdiction:

> Indeed, "it is well-established that consent is an independent basis for the exercise of personal jurisdiction." *Am. Dairy Queen Corp. v. W.B. Mason Co.,* No. 18-CV-693, 2019 WL 135699, at *3 (D. Minn. Jan 8, 2019) *(citing Ins. Cor of Ireland v. Campagnie des Bauxites de Guinee,* 456 U.S. 694, 703 (1982)). The Eighth Circuit Court of Appeals and the Minnesota Supreme Court have held that business entities that register and have an agent for service of process in Minnesota have consented to general jurisdiction in this State." (citations omitted).

---

[2] https://mblsportal.sos.state.mn.us/Business/SearchDetails?filingGuid=8f3f2d19-94e6-e711-9154-00155d0d6f70

*Cohen v. Consilio LLC,* Civil No. 20-1689 (DSD/HB), 2021 WL 2156400 *7 (D. Minn. May 27, 2021). Judge Doty went further. "Because the court has general jurisdiction over Consilio, its specific jurisdiction argument is moot." (citations omitted). *Id.* at n8.

The Eighth Circuit Court of Appeals examined the argument that many defendants make – the Minnesota long-arm statute is the only means of obtaining personal jurisdiction over an out-of-state defendant. *Knowlton v. Allied Van Lines, Inc.,* 900 F.2d 1196, 1198 (8th Cir. 1990). It specifically addressed the district court's "belie[f] that a foreign corporation's designation of a registered agent for service of process under Minn.Stat. Sec 303.10 was not sufficient consent for the Court to assert personal jurisdiction over it," *Id.* After observing that the district court correctly analyzed Minnesota long-arm statute (finding that under the facts of that case it did not confer jurisdiction), the appellate court summarized two other ways to find jurisdiction: consent and whether a defendant is 'present' in the forum state. The appellate court:

> conclude[d] that appointment of an agent for service of process under Section 303.10 gives consent to the jurisdiction of Minnesota courts for any cause of action, whether or not arising out of activities within the state. Such consent is a valid basis of personal jurisdiction, and resort to minimum-contacts or due-process analysis to justify the jurisdiction is unnecessary."

*Id.* at 1200.

### *3.* Co-conspirators Are Subject To Conspiracy-based Jurisdiction

"There are generally two categories of cases where defendants are legally liable to plaintiffs even though they have had no previous contacts with defendants: 1) when the defendant's conduct is the result of a conspiracy; 2) where the plaintiff was injured by joint tortfeasors." *Emig v. American Tobacco Co.,* 184 F.R.D. 379 (D. Kansas 1998).

Co-conspirators are jointly and severally liable for illegal activities of other co-

conspirators for prior acts before joining. *Scheele v. Union Loan & Finance Co.,* 274 N.W. 673, 678 (Minn. 1937); *See also, Silliman v. Dobner,* 165 Minn. 87, 205 N.W. 696 (1925).

Conspiracy-based jurisdiction is based on Minnesota's state long-arm statute and adopts the three-part test common to district courts sitting in the Eighth Circuit. *See, Personalized Brokerage Servs., LLC v. Lucius,* No. 05-cv-1663, 2006 WL 208781, at *5 (D. Minn. Jan. 26, 2006) ("[Plaintiff] must show '(1) the existence of a conspiracy; (2) the nonresident's participation in or agreement to join the conspiracy; and (3) an overt act taken in furtherance of the conspiracy within the forum's boundaries.").

Well before conspiracy jurisdiction was in wide use, The Minnesota Supreme Court found that "[o]nce participation in a tortious conspiracy - the effect of which is felt in this state- is sufficiently established, actual physical presence of each of the alleged conspirators is not essential to a valid assertion of jurisdiction.' … [But] Minnesota's 'long arm statute … does not confer jurisdiction whenever a tort is committed by a nonresident []' with consequences in Minnesota and that "due process … requires that 'minimum contacts' exist between the defendant and the forum state." First quoting *Hunt v. Nev. State Bank,* 172 N.W.2d 292, 311 (Minn. 1969) then *Kopperud v. Agers,* 312 N.W.2ed 443, 445 (Minn. 1981). ("Physical presence has not been required since *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945); thus, the presence of the conspirator is not necessary, but the effects of its conspiracy are…").

There are limits to conspiratorial jurisdiction as Judge Tostrud analyzed in affirming Magistrate Judge Bowbeer's decision in *DURAG v. Kurzawski, Case No. 17-cv-5325 (ECT/HB, 2020 WL* 2112296 (D. Minn. May 04, 2020). *DURAG* addressed Rule 12(b)(2) lack of personal jurisdiction and application of conspiracy theory to personal jurisdiction. Judge Tostrud first summarized the basic idea of conspiracy-based jurisdiction.

The idea behind conspiracy-based jurisdiction is simple enough:

> As a matter of substantive law, a conspirator who performs an act in furtherance of the conspiracy does so as an agent for his co-conspirators. Plaintiffs have begun to argue that because co-conspirators are each other's agents for purposes of liability and the act of an agent in the forum state may establish jurisdiction, they need only allege contacts sufficient for one defendant to obtain jurisdiction over all co-conspirators. (citations omitted).

*DURAG at *12.* Judge Tostrud also summarized the due process requirements of conspiracy-based jurisdiction:

> Federal courts in this district and elsewhere seem to apply consistent rules to determine whether a plaintiff has shown that exercising conspiracy-based personal jurisdiction comports with due process. Conspiracy-based personal jurisdiction "requires (1) the existence of a conspiracy; (2) the nonresident's participation in or agreement to join the conspiracy; (3) in overt act taken in furtherance of the conspiracy within the forum's boundaries." (citation omitted).

*Id.* at *13.

Getting into the weeds, the gist of co-conspirator's (Lametec Germany) argument in *DURAG* is the same as YES Energy. Lametec Germany argued that "itself" had insufficient contact with Minnesota. Judge Tostrud did not find that argument availing.

> That argument does not address DURAG's conspiracy allegations – i.e., it does not address whether DURAG has shown a reasonable basis to attribute Kurzawski's Minnesota contacts and activities to Lametec Germany or Greul. Greul asserts that "[t]here is no allegation, and certainly no evidence identified by [DURAG], that shows that Greul himself took any action towards Minnesota, or even with the knowledge that either Kurzawski or Lametec intended to take any action in Minnesota or that would have any effect in Minnesota. [citations to brief omitted]. The assertions in this sentence do not fairly respond to the allegation in DURAG's amended complaint or the evidence DURAG submitted in opposition to these motions. Gruel does not identify which of DURAG's allegation or evidence are insufficient or explain why that is so."

*Id.* at *17. YES Energy makes the same unavailing argument.

## 4. Co-conspirators Are Jointly And Severally Liable

Civil conspiracy involves a combination of persons to accomplish either an unlawful purpose or a lawful purpose by unlawful means. *Dunbar v. Wells Fargo Bank, N.A.,* 853 F.Supp.2d. 839, (D. Minn. 2012). No formal agreement is necessary. *Wright & Associates, Inc., v. Ullrich,* 203 F.Supp. 744 (D. Minn. 1962). A civil conspiracy claim is merely a vehicle for asserting vicarious or joint liability. *Strei v. Blaine,* 996 F.Supp.2d 763 (D. Minn. 2014). *See also, Cenveo Corp. v. Southern Graphic Systems, Inc.* 784 F.Supp.2d 1130 (D. Minn. 2011).

Co-conspirators are jointly and severally liable for illegal activities of other co-conspirators, including prior acts before joining the conspiracy.

> Conspirators do not make minutes of their machinations, progress and objectives. Seldon, therefore, can conspiracy be proved by other than circumstantial evidence. It is only by assembling the results, with such evidence as may be of progress thereto by the participants, that the victim can ever make a case of conspiracy. If in the end there is a completed structure of result, the frame of which has been furnished piecemeal by several individuals, the parts when brought together showing adaptation to each other and fitness for the end accomplished, it is at least reasonable to infer concert in both planning and fabrication.

*Scheele v. Union Loan & Finance Co.,* 274 N.W. 673, 678 (Minn. 1937).

> It is immaterial that defendant Sterling and Union Loan Company [alleged co-conspirators] may not have been participants in the wrongful purpose at its inception. It is enough if there is evidence, as there is, that before its consummation, each of them actively participated in the common design. *Silliman v. Dobner*, 165 Minn. 87, 205 N.W. 696 [1925]. If a fraudulent plan is conceived and for a time carried on by one wrongdoer, and later others join and participate in its accomplishment, there is a conspiracy as to all of them.

*Id.* at 679.

In the instant litigation, there is no end point – no final consummation. Plaintiffs allege a continuing conspiracy. The conspiracy started with RealPage and continues with YES Energy. A recent well-reasoned analysis of co-conspirator liability is *In re Enron Corp,* 623 F.Supp. 2d

798 (S.D. Tex 2009).

> "[I]t is not necessary for each coconspirator even to agree to or actually participate in every step of the conspiracy. A coconspirator is bound by the overt acts of other coconspirators furthering the conspiracy both before and after being enlisted even though he may not participate in each overt act. A coconspirator need not be, and often is not, aware of everything being done to further the conspiracy. . . . [C]onspiracies involving elaborate arrangements generally are not born full-grown, but rather mature in successive stages as other parties are added who may not know all that has gone before. Nonetheless, these new members assume the risk. [citations omitted]." Id. Conspiracy requires that a conspirator have knowledge of the common purpose or goal, not of every act or participant that furthers that purpose, that binds that conspirator and makes that conspirator jointly and severally liable for the damages caused by that fraud on investors and rating agencies. [Plaintiffs] JPMorgan Chase [co-conspirator] argues it cannot be held liable for Enron's [another co-conspirator] myriad business failures (e.g., the Dabhol power plant in India or the broadband business), of which it had no connection or no knowledge. The Court disagrees to the extent that Defendant can be held liable for all acts by co-conspirators in furtherance of the common goal of the conspirators.

*Id.* at 831-32.

Plaintiffs plausibly pled that YES Energy continues the conspiracy (The Scam). Other than YES Energy replacing RealPage, nothing else basically changed. YES Energy's monthly billing statements continue to include the SAME bogus fees that RealPage billed. Both send out monthly billing statement based on the SAME Lease Agreement. Both are participants in the SAME conspiracy. It is plausible, reasonable and logical to infer that by continuing to send out billing statements with the same bogus fees, YES Energy's **conduct** is tantamount to ratifying, agreeing, and adopting The Scam, at least for purposes of a motion to dismiss. And of course, there has been no discovery. It will flush out, where in fact YES Energy actions equal consenting to the conspiracy agreement (perhaps through an agreement) or alternatively, consented to the conspiracy and The Scam through its conduct.

### **Meeting of the Minds**

12

The Minnesota Supreme Court quoted *White*, an 8th Circuit Court of Appeals decision, on the required proof of a conspiracy and meeting of the minds:

> [C]onspiracies are by their nature usually clandestine. It is unlikely that a plaintiff in a conspiracy case will be able to provide direct evidence of a conspiratorial agreement. Thus such evidence is not necessary to prove that a civil conspiracy existed. Accordingly, depending upon the conspiracy alleged in any particular case, the complainant may or may not be in a position to allege with precision the specific facts giving rise to the claim. *White v. Walsh,* 649 F.2d 560, 561 (8th Cr. 1981) (internal quotation and citation omitted). Plaintiffs have pleaded facts indicating that "defendants had directed themselves toward an [illegal] action by virtue of a mutual understanding, and some factual allegations suggesting such a 'meeting of the minds." *Id.* (internal quotation omitted). As such they have pleaded the elements of a conspiracy with adequate specificity under the Federal Rules."

*Stephenson v. Deutsche Bank Ag,* 282 F.supp.2d 1032, 1070 (Minn. 2003).

Plaintiffs pled some aspects of 'meeting of the minds" on information and belief. YES Energy conduct also in continuing the illegal activities of RealPage is strong circumstantial evidence of meeting of the minds. Some evidence is solely in the possession of Defendants, such as the actual agreement between Bader and YES Energy. It is premature for the court to decide this issue without Plaintiff have the opportunity to engage in discovery and present this evidence to the Court for a decision on the merits.

Evidence of a conspirators' state of mind is generally not available to plaintiffs. *Mandelkorn v. Patrick*, 359 F.Supp. 692 (D. D.C. 1973) ("The pleading of a conspiracy by anything other than conclusory terms would necessarily involve questions of the state of mind of the alleged conspirators and agreements among them which by their nature would be inaccessible to Plaintiff. It would seem harsh, if not impossible, to require a factual showing as to that at the pleading stage..."). The required showing is that that a plaintiff:

"must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *City of Omaha Employees Betterment Ass'n,* 883 F.2d at 652 (citations omitted). That may be accomplished by "pointing to at least some facts which would suggest that [the defendants] reached an understanding to violate [the Larsons] rights." Id. (quotations omitted).

The Larsons need not show that each participant knew the "exact limits of the illegal plan...." *Hampton v. Hanrahan,* 600 F.2d 600, 621 (7th Cir.1979) (quotations omitted), rev'd in part on other grounds, 446 U.S. 754, 759, 100 S.Ct. 1987 1990, 64 L.Ed.2d 670 (1980). The question of the existence of a conspiracy to deprive the plaintiffs of their constitutional rights "should not be taken from the jury if there is a possibility the jury could infer from the circumstances a 'meeting of the minds' or understanding among the conspirators to achieve the conspiracy's aims." *Putman v. Gerloff,* 701 F.2d 63, 65 (8th Cir.1983) (quoting Hampton, 600 F.2d at 621).

*Larson v. Miller,* 76 F.3d 1446 (8th Cir. 1996). *See also, Beltz Travel Serv. Inc. v. Int'l Air Transp. Ass'n,* 620 F.2d 1360, 1366-67 (9th Cir. 1980) ("Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result.").

In *Dean v. Cnty. of Gage,* 800 F.3d 945 (8th Cir. 2015), "[t]o be liable as a conspirator [one] must be a voluntary participant in a common venture.... It is enough if [Defendants] understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do [their] part to further them." *White*, 696 F.3d at 757, quoting *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988) (alterations and ellipsis in original)."

A genuine issue of material fact on the 'meeting of the minds' preclude summary judgment on the conspiracy claim. *American Bank of St. Paul v. TD Bank, NA,* Civil No. 09-2240 ADM/TNL, 2011 WL 1810643 (D. Minn. May 09, 2011). Dispute of material facts standard on meeting of the minds also applies to a motion to dismiss, a dispositive motion.

Plaintiffs make a plausible claim that YES Energy's sending out billing statements with the same bogus fees, pursuant to the same Lease Agreement and same conspiracy is **conduct** that is circumstantially tantamount of meeting of the minds.

### 5. Juridical Linked Jurisdiction Applies To Co-conspirators

The Minnesota Supreme Court has not yet decided whether to embrace the doctrine of juridical linked jurisdiction. It is not settled law whether this doctrine applies in Minnesota or whether it only applies for purposes of class certification and/or standing.[3] The Minnesota Supreme Court summarized the doctrine: "[T]he doctrine posits that in class action in which a named plaintiff has not alleged an injury caused by all defendants, a class may be certified when all defendants are linked by a conspiracy or concerted scheme that harmed the class." *Stone v. Invitation Homes, Inc.,* A-22 0928, 2024 WL 1423872 (Minn. April 3, 2024)[4]. *See also, Buetow* at 1044 ("The exception [juridical link] applies where the named plaintiffs in a class action have no relationship with one or more named defendants, but all of the defendants are related in some fashion-whether by contract, conspiracy, or otherwise – such that "a single resolution of this dispute would be expeditious." (citations omitted).

Juridical linked jurisdiction eliminates the need for the parties and the court to address thorny and complicated motion practice that tends to be hotly litigated in traditional jurisdictional analysis, taking significant time and resources for the parties and the court. Some issues include whether YES Energy is a necessary and/or indispensable party, and whether the putative class is able to obtain complete relief without the co-conspirator. Juridical link also

---

[3] Plaintiffs anticipate these issues will be more fully developed in its motion for class certifications.

[4] The 8th Circuit Court of Appeals also addressed this doctrine but it is not all that helpful since the issue of conspiracy was not before the court. *Wong v. Wells Fargo Bank N.A.,* 789 F.3d 889 (8th Cir. 2015).

eliminates litigating of whether YES Energy falls under joint and several liability of all co-conspirators. Juridical-linked jurisdiction leaps over these procedural issues.[5]

Without YES Energy, the Putative Class cannot obtain complete relief. An illustrative example is helpful. Assume that a member of the putative class executed a one-year Lease Agreement in August 2023. At that time, RealPage sent out monthly billing statements to both the putative class and Plaintiffs. However, and after Plaintiffs moved out in October 2024, and starting in November (or later), YES Energy started to send out billing statements to the putative class, replacing RealPage. After November, the Plaintiffs did not get a billing statement from YES Energy as they moved out.  However, the putative class started to receive billing statements from YES Energy and continues to do so.  As a continuing conspiracy, as each month ensues, the putative class damages also continue to accrue.

In this illustration, the tenant in the putative class is not able to get complete relief for any damages from November 2023 to August 2024 (8 months of bogus fees) because and under traditional standing rules, YES Energy also did not also send a bill to the named Plaintiffs. Only by keeping YES Energy in this lawsuit can the putative class obtain complete relief. This is one of the benefits of juridical-linked jurisdiction. It brings YES Energy before the court without the parties or the court having to jump through all of the traditional jurisdictional and standing issues relative to necessary or indispensable parties, and complete relief of the parties.

Under traditional standing analysis, a second lawsuit against YES is typically required for

---

[5] Plaintiffs recognize the general rule that whether a party is a necessary or indispensable party is a federal court procedural rule.  However, it may be helpful to consider the view of the Minnesota Supreme Court. The better practice for courts in cases where a party is necessary and indispensable is to add that party to the action whose absence complete relief cannot be accorded. *Schulz v. Town of Duluth,* 936 N.W. 344, 340 (Minn. 2019).

the putative class to get complete relief, including injunctive relief for future damages. However, parallel lawsuits are disfavored when the underlining facts are the same and the legal claims are the same, as is the case in this litigation. Other than switching out RealPage for YES Energy, everything is basically the same. The Scam continues with YES Energy.

It is not equitable for Defendants to play the 'shell game' to deprive members of the putative class out of damages. The FAC pled that Defendants created shell entities to avoid liability. "After Plaintiff gave notice of claims against Defendants for the Scam and before this Complaint was filed, Landlord and affiliated entities reorganized as Bader Management, Inc., in part, to avoid liability for The Scam that occurred before reorganization." FAC ¶ 29. The summary of the allegations pled were preceded by the underlying predicate facts. *Id.* at ¶ ¶ 21-28. A reasonable inference is that the shell games that was pled for liability is equally applicable to damages. As it now stands, the member of the putative class that executes a Lease Agreement as specified in the above illustration, is not able to obtain 9 months of damages under the 12-month Lease Agreement. Juridical linked jurisdiction solves these problems.

### B. Plaintiffs Plausibly Pled Conspiracy

The Minnesota Supreme Court observed that conspiracy is not required to be pled with particularity, such as fraud. *Stephenson v. Deutsch Bank Ag,* 282 F.Supp.2d 1032, 1070 (Minn. 2003) ("Rule 9(b) has a short list of matters (such as fraud) that must be pled with particularity; conspiracy is not among them. '[I]t is enough in leading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with'").

Nonetheless, The FAC pled with particularity, a conspiracy agreement (FAC, ¶ ¶ 72 –

78), as well as the 'Who, What Where, When and Why of the conspiracy (FAC ¶ 151 – 167).

Facts as applied to Plaintiffs (FAC ¶ ¶ 94 – 274) were pled and comprises the bulk of the FAC.

The FAC, ¶ ¶ 72 – 78 pled the following allegations of the **conspiracy agreement**:

72. At all times relevant herein, all Defendants, individually and collectively, agreed to The Scam and its implementation. Some co-conspirators participate in some parts of The Scam while others participated in other parts. The illegal and ulterior motive of the Scam was to enter into an illegal agreement to accomplish the illegal purpose of stealing and cheating from residential tenants. Pursuant to The Scam, Defendants sent tenants monthly billing statements that included bogus utility bills. Implementation of The Scam included engaging in unlawful debt collections, unlawful freezing a tenant's on-line portal to pay rent, and filing unlawful eviction court complaints and conciliation court complaints for bogus fees and bogus destruction of property, and bogus fees for alleged unclean units when vacated and alleged destruction of the premises. Pursuant to the Scam, Defendants created an alleged Third-Party Agreement between the tenant and the public utility companies for gas and electricity, in which the tenant purportedly 'waived' their right to free monthly billing statements. Pursuant to the Scam, Defendants created boiler-plate lease agreements that failed to specify all fees on the first page of residential leases, pursuant to Minnesota statutes, and created terms and conditions that are deceptive, misleading, and confusing to trick tenants into believing that they had no right or option but purportedly 'consent' to the bogus charges. Pursuant to the Scam, Defendant RealPage and subsequently YES Energy designed policies and procedures for their customer service call centers to dissuade and trick tenants to believing that the bogus fees were correct, legitimate, and without any recourse to dispute or request an investigation.

73. At all times relevant herein, each Defendant, individually and/or collectively as agent(s) of the principal (the Landlord), and in a representative capacity of other Defendants, and as co-conspirators, with agreement and ratification by other Defendants, entered into and agreed to the Scam to deliberately and intentionally commit statutory consumer fraud, common law fraud, misrepresentation, abuse of process, retaliation, and unlawful eviction and other violations of law as more fully specified in this Complaint to engage in deceptive, misleading, misstatement and omission of material facts and law to unlawfully steal and cheat from Plaintiffs and the putative class.

74. Whenever reference is made in the Complaint to any act of any Defendant, the allegation shall mean that the Defendant did the act alleged in this Complaint either personally or collectively, or as a co-conspirator, or through a Defendant's officers, directors, employees, agents or/and representatives acting within the actual or ostensible scope of their authority.

75. At all times mentioned herein, each Defendant knew or should have known that the other Defendant(s) were engaged in or planning to engage in the violations alleged in this Complaint. Knowing this, each Defendant nevertheless facilitated the commission of those unlawful acts. Each Defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts alleged in this Complaint, and thereby aided and abetted the other Defendants in the unlawful conduct.

76. Defendants have engaged in a conspiracy, common enterprise, and common course of conduct, the purpose of which is and was to engage in the violations of law alleged in this Complaint and continue to the present.

77. Whenever reference is made in this Complaint to any act of Defendant(s), that allegation shall mean that each Defendants acted individually and jointly with the other Defendants named in that cause of action.

78. Each Defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint. Additionally, some or all of the defendants acted as the agents of the other defendants, and all of the Defendants acted within the scope of their agency if acting as an agent of another.

1. **The FAC Pled Allegations of Who, What, Where, When and Why**

The FAC ¶ 151 – 167 also adds factual specificity for the conspiracy agreement and its

implementation:

**Step 1: Veil of legitimacy and legality of legal documents**

151. All Defendants, except YES Energy,[6] conspired and entered into the initial illegal agreement to scam Plaintiff and the Putative Class. They designed residential lease policies and procedures to conform to The Scan. They modified the lease agreement and addenda to conform to The Scam. They created a purported Third-Party Agreement (between a tenant and its gas and electricity carriers) in which the tenant allegedly consented for Defendants to send monthly billing statements, to bill and to collect bogus fees.

152. These changes in policy and procedures, the lease and addenda, and the Third-Party Agreement violate federal and state debt collection practices pursuant to FDCPA §1692 *et seq.,* Minnesota Collections Agencies Act, Minn. Stat.§ 332.31 *et seq.,* the Minnesota Prevention of Consumer Fraud Act ("CFA"), M.S. § 325F.68 *et seq*.; and related statutes and common law

---

[6] Although YES Energy was not part of the initial agreement, upon information and belief, it ratified, accepted and continue to engage in the same illegal practices in pursue to The Scam as alleged against RealPage herein as a co-conspirator.

rights, including abuse of process, fraud, fraudulent misrepresentation, material breach of the residential lease, and retaliation for Plaintiffs and the Putative Class of giving Defendants notice and complaining of the bogus fees.

153. Defendants intentionally, deliberately and maliciously omitted material facts to Plaintiffs and the Putative Class when executing the lease. They omitted existing and material facts known to Defendants – a tenant can get a billing statement from their gas and utility carrier at no cost. They combined this nondisclosure with disclosure of other material facts that misrepresent, mislead, and deceive tenants of their legal rights which are in part specified in the lease agreement and addenda, the Third-Party Agreement, and in verbal discussions. They tricked Plaintiffs and the Putative Class to believe that RealPage is lawfully engaged to do business in Minnesota (although it does not have a Certificate of Authority), is licensed to engage in third-party collection activities (although not duly licensed), can receive payments for debt collection (which it cannot), charge for collection activities (which it cannot), and that the legal documents executed are legitimate and legal (which they are not).

**Step 2: The trap is set**
154. The take-it-or-leave-it residential lease agreement and addenda and alleged policies and procedures are designed to spring the trap and create the guise of legitimacy and legality, providing legal cover of the alleged consents and legality of bogus charges.

155. Alternatively, Defendants created an alleged Third-Party Agreement (between a tenant and its respective gas and utility provider). This agreement is another purported consent for RealPage to send a tenant billing statements for underlying gas and electricity consumption charges and bogus fees and other fees. The purported Third-Party Agreement is not integrated into and not part of the lease/contract agreement and addenda.

**Step 3: Bogus fees and other charges are billed**
156. RealPage and YES Energy send monthly billing statements to Plaintiffs and the Putative Class for underlying usage/consumption of gas, electricity, water, sewer, and trash. These underlying usage charges are not at issue in this litigation. However, bogus charges that RealPage and YES Energy adds are at issue.

**Step 4: No remedy but pay bogus fees**

157. When Plaintiffs and the Putative Class question or dispute billing statements, including bogus fees, RealPage customer service (call center) employees routinely represent that nothing can be done -- that all charges are proper. There is no meaningful review of a complaint or appeal process. There is no investigation process for a disputed charge. After expiration of a due date, RealPage considers the bill outstanding or delinquent.

**Step 5: Illegal debt collection starts – The rent portal is frozen**

158. RealPage initiates collection communications through template 'form letters' and/or template monthly invoices/statements sent by US mail, email, or posted on the tenant's on-line utility portal. The written communications threaten collections, including threats to shut-down tenant's rent portal and threats of eviction.

159. At the time of shutting-down (freezing) the rent portal, no rent is due and owing. Key to The Scam is that shutdown unlawfully prevents a tenant from paying next month's rent.

160. The initial collection communication fails to notify a debtor, in statutory required fonts and size, that the communication is an effort to collect a debt and results from those efforts will be used to collect the debt. It also fails to notify the debtor that if disputed, the debtor has a right to dispute the validity debt, get validation of the debt, and to know of and follow a process to resolve a disputed debt. It fails to notify the debtor in the initial communication that the debt collector is licensed in Minnesota as a debt collector or collection agency.

161. The rent portal remains shut down until all bogus fees are paid. Time ticks on. Next month's rent eventually becomes due. It is significant that no rent is due when the portal was initially shut down. The Landlord refuses to reopen the rent portal until all bogus utility fees are paid. The insidiousness of The Scam is that inability to pay rent is solely in the hands of the Landlord and caused entirely by the Landlord by shutting down the rent portal for not paying the bogus utility fees, even though a tenant is desperate to pay rent to avoid eviction.

**Step 6: Illegal eviction**

162. Notice of eviction is served followed by filing and serving a summons and eviction complaint. A primary ground alleged is material breach of lease for nonpayment of rent. The eviction complaint lacks candor and constitutes fraud. In part, it fails to specify that rent payment is impossible because it was the Landlord that froze the rent payment portal.

163. There is no material breach of the lease to warrant eviction for nonpayment of rent. There was only a nonmaterial breach of the lease – failure to pay nominal and bogus utility fees, which also are disputed. The lease specifies a material breach for non-payment of rent occurs after five late payments of rent within a 12-month period.

164. Landlord serves and files eviction complaints routinely after the first rent payment is deemed late, not after five late payments within a 12-month period. An unsophisticated tenant does not know that freezing of the rent portal is illegal or that there is a legal distinction of not paying rent (a material breach) in contrast to paying rent late (a mere non-material breach). These predicate issues are conveniently not presented to Housing Court. Default judgment is usually entered since there is typically no appearance by a tenant. The Scam does not see the light of day in Housing Court.

**Step 7: Rent deposit is withheld. Tenants charged bogus fees when vacating premises.**

165. The Landlord routinely refuses to refund lease deposits. It also charges bogus Move Out Charges after the premises are vacated. Bogus charges include alleged cleaning, alleged destruction of household equipment and appliances, alleged destruction of furnishings and/or property, and future charges for rent until the unit is re-rented.

166. Scott Management sent a Move Out Demand Letter to Plaintiffs on September 28, 2023 with a demand for $9,751.54 in bogus Move Out Charges.

**Step 8: Illegal Conciliation Court complaints filed**

167. Even after eviction, The Scam continues. The Landlord typically threatens and then files and serves a Conciliation Court complaint to collect the bogus Move-Out Charges. To add insult to injury, Landlord demands payment for costs, disbursements, and attorney fees. Most Conciliation Court complaints are decided by default. Landlord enforcement ensues and

typically includes filing of liens and wage garnishment and part of Plaintiffs and the Putative Class claims for injuries and damages.

Additional factual specificity of the agreement and injuries as **applied to Plaintiffs** are pled with specificity in the FAC ¶ ¶ 94 – 274, which comprises the bulk of the FAC.[7]

The FAC plead injuries including that Defendants must disgorge all bogus fees:

137. RealPage and YES Energy unlicensed status means that they cannot engaged in any collection "communications" with Plaintiffs and the Putative Class. Nor can they collect or receive any money from Plaintiffs and the Putative Class. RealPage and YES Energy are not entitled to be paid for undertaking an unlawful course of business in Minnesota. All Administrative Fees and other fees and charges that are charged to Plaintiff and the Putative Class that were imposed by RealPage and YES Energy must be refunded or disgorged.

FAC ¶ 137. The FAC pled that Plaintiffs paid the disputed bogus fees. *Id.* ¶ ¶ 200, 229. Additional financial injuries include payment of Housing Court filing fees for two evictions, and attorney fees. General and special injuries also were pled:

146. When RealPage and YES Energy directly and indirectly collect and seek to collect delinquent or outstanding rent, delinquent or outstanding utilities and associated bogus charges and other fees from Plaintiffs and the Putative Class, they are engaged in illegal collection activities.

147. RealPage and YES Energy unlicensed actions as a debt collection agency cause and continues to cause damage to Plaintiffs and the Purported Class as a result of their multiple violations of the FDCPA, CFA, MHRA, related statutes, and common law.

148. Damages include, but are not limited to, a victim of illegal collection activities, extortion to make payments for bogus collection-related fees and charges, financial distress and anxiety from the inability to make these illegal payments, risk or face actual eviction, emotional and psychological injuries, including stress, distress, trauma and anxiety with physical manifestations

---

[7] Factual allegation relative to each count pled is included in those sections of this memorandum.

such as headaches, migraines, inability to sleep, weight gain/loss, aggravation of pre-existing PTSD, as well as financial hardship and injuries by in part diverting monthly cash for daily living expenses to pay bogus fees or face eviction with insufficient cash to pay other necessary monthly financial obligations.

149. For those evicted, injuries and damages include facing a public record of eviction for alleged non-payment of rent. This in turn creates similar financial, emotional and psychological distress as specified herein as well as financial distress in difficulty to find on short term notice another rental unit, especially without the timely return of rent deposits from Landlord. A record of eviction for nonpayment also creates credit impairment for bad credit and in turn increases credit card interest rates and commercial loan interest rates for "bad credit" as a result of a public record of eviction for nonpayment of rent.

FAC ¶¶ 146-149.

## C. Sanctions Are Not Warranted

In addition to section 1927, courts also possess:

"[T]he inherent power to sanction parties and their attorneys, a power born out of the practical necessity that courts be able to manage their own affairs so as to achieve the orderly and expeditious dispositions of cases. [citations omitted]. Under either the court's inherent authority or section 1927, a court "must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes.

*JGIAP RH 160 v. CRI Holding Corp.,* 21-CV-02489-DG-JRC, 2023 WL 5979125, *51

(E.D.N.Y. Aug 16, 2023). It provided several examples where sanctions are not warranted:

"where the claims "were support by … good faith arguments to extend, modify, or reverse the

law of this Circuit; "like Rule 11, under section 1927, courts typically decline to impose

sanctions where the purported sanctionable conduct involves the advancement of a novel legal

theory or a misinterpretation of the law"; "where no previous court has considered a particular

or novel issue, sanctions under §1927 generally are disfavored"; "misunderstanding the law or

attempting to extend the law to a novel application is not an appropriate basis for sanctions". *Id.* at *52-53.

Filing of a complaint is generally not sanctionable under section 1927. *El-Khalil v. Tedeschi*, 18-12759, 18-12759, 2023 WL 5827666, *15 (E.D. Mich. Sep 08, 2023).

> Since the plain language of the statute only penalizes attorneys who vexatiously and unreasonably "multiply" proceedings, Courts generally do not impose sanctions under 28 U.S.C. § 1927 based on the filing of an initial complaint that turn out to be meritless…[T}his Court agrees with numerous other courts that have addressed the issue head-on in finding that the plain reading of Section 1927 does not permit an attorney's fee award based on the filing of Plaintiff's initial complaint" (citations omitted).

The *El-Khali* Court also found that "filing of an amended complaint was the functional equivalent of his having filed the original complaint-which is insufficient to merit §1927. *Id.* at *17-18.

In this case, a credible argument exists that YES Energy's attorneys are the ones to be sanctioned. They ignore basic law on jurisdiction in Minnesota. YES Energy consented to personal jurisdiction in Minnesota by registering to do business here. They ignore that consent is an independent basis for personal jurisdiction, with the result, specific jurisdiction is moot. In other words, their key argument that the court does not have personal jurisdiction is contract to fundamental law and lacks a good faith basis.

YES Energy also failed to address the key issue in conspiracy-based jurisdiction - it is simply not relevant that YES Energy itself did not commit an unlawful act in an illegal conspiracy, which then resulted in problematic meet-and-confer efforts. The rightness or wrongness of this position is not per se sanctionable, especially since the validity of a conspiracy is a very fact intensive inquiry, which is clearly premature at a motion to dismiss stage, when there has been no discovery. Sanctions also are clearly not appropriate when Plaintiffs are

advancing an area of the law that is not settled – juridical linked  jurisdiction. Sanctions should

be denied.

IV.    *CONCLUSION*

For the reasons stated above, Plaintiffs respectfully request that YES Energy's motion

to dismiss be denied.

Dated 6/11/2024

s/ Earl Singh
Earl Singh (MN# 0178263)
Singh Advisors, LLC
711 Smith Avenue South
St. Paul, MN  55107
651-647-6250 (phone)
earl.singh@singhadvisors.com